IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| PATRICIA N. and GUY N.,<br>Individually and on behalf of<br>their minor daughter AMBER<br>N., | )<br>)<br>)<br>) | CIVIL NO. CV00-00252 MLR-BMK<br>(Other Civil Matter) |
| | ) | **MEMORANDUM IN SUPPORT** |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | |
| PATRICIA HAMAMOTO, in her<br>official capacity as<br>Superintendent of the Hawaii<br>Department of Education;<br>DEPARTMENT OF EDUCATION,<br>STATE OF HAWAII, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

<u>MEMORANDUM IN SUPPORT OF MOTION</u>

Defendants, by and through their attorneys, WATANABE ING & KOMEIJI LLP, hereby submit the following Memorandum in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint for Failure to Exhaust Administrative Remedies.

I.    **BACKGROUND**

Plaintiff Amber N. ("Amber") was diagnosed with autism in 1997.  To help ensure that Amber received an appropriate education, Plaintiffs Guy and Patricia N. (collectively, "Parent Plaintiffs") hired Autism Partnership to provide autism specific training, curriculum, and to develop an in-home program for Amber.  Plaintiff Patricia N. ("Patricia") has been "in charge" of running and implementing Amber's in-home program since November of 1997.  In May of 1998, Patricia quit her job at a trading company so that she could devote more of her time to Amber's in-home program.  Patricia and Plaintiff Guy N. ("Guy") have also filled-in as skills trainers in Amber's in-home program.  <u>See</u> Deposition Transcript of Patricia N., dated March 16, 2001, at pp. 122:25-123:7, a true and correct copy of which is attached as Exhibit "A"; Deposition Transcript of Guy N., dated March 14, 2001, at p. 129:17-23, a true and correct copy of which is attached as Exhibit "B".

Sometime in 1999, Plaintiffs requested an administrative hearing claiming that Amber was denied a free and appropriate public education ("FAPE") under the Individuals with

Disabilities in Education Act ("IDEA").[1]  The administrative

hearing was held on October 18, 19 and 25, 1999 (the "1999

Hearing").  See Decision and Order, dated February 2, 2000, a

true and correct copy of which is attached as Exhibit "C".

        At the 1999 Hearing, Plaintiffs argued that Amber was

being denied FAPE because the education she was receiving, while

appropriate, was not "free."  As a result, Plaintiffs requested

reimbursement for monies spent on autism related services and

materials up to July 1, 1999.  Plaintiffs, however, did not seek

reimbursement for Parent Plaintiffs' lost wages.  They also did

not seek reimbursement for their time in delivering autism-

specific services to Amber.  See Deposition Transcript of

Patricia N., dated April 5, 2001, at pp. 296:12-297:15, a true

and correct copy of which is attached as Exhibit "D".  Moreover,

Plaintiffs did not question the appropriateness of Amber's

Individualized Educational Program ("IEP").  Instead, both

Plaintiffs and the Department of Education ("DOE") stipulated and

agreed that the education Amber was receiving was appropriate.[2]

---

        [1]     Plaintiffs also requested relief under the
Rehabilitation Act, 29 U.S.C. § 794 ("Section 504").  The hearing
officer, however, expressly denied Plaintiffs' Section 504 claim
ruling that "relief requested [under Section 504] is the same as
that of the [IDEA] action . . . [a]ccordingly the 504 request is
denied.  See Exhibit "C", Decision and Order at 13.

        [2]     Both parties stipulated and agreed that "the present
levels of performance, goals, objectives, and the time amounts of
services as set forth in the January 13, 1998, April 3, 1998, May
5, 1998, November 6, 1998 and January 29, 1998 IEPs were

In fact, Patricia has admitted that the appropriateness of Amber's IEP was not presented as an issue at the 1999 Hearing. See Exhibit "A" at pp. 71:16-72:10.

The hearing officer found that Amber's program was not "free" and thus ultimately ruled that Amber was denied FAPE. As a result, the DOE was ordered to reimburse Plaintiffs $13,771.88, which represented the amount of money Plaintiffs spent on autism related services and materials (e.g., a computer, flashcards, furniture, etc.) up to July 1, 1999. See Exhibit "C", Decision and Order at 8-12.

It is important to note that Plaintiffs did request an award for future educational expenses, outside of Autism Partnership consults, to cover the ongoing costs in maintaining Amber's home program. See Exhibit "C", Decision and Order at 12-13. The hearing officer, however, refused to address this issue. Instead, he stated his hope that both parties would be able to resolve any future disputes concerning educational expenses between themselves. The hearing officer, however, also directed the parties to request another impartial hearing if they could not come to a resolution. See Exhibit 'C", Decision and Order at 13. Neither party appealed the hearing officer's decision.

On April 4, 2000, just two months after the hearing officer rendered his decision, Plaintiffs filed their original

---

appropriate." See Exhibit "C", Decision and Order at 5.

- 3 -

Complaint in the instant action, claiming that the Defendants violated Section 504 by intentionally discriminating against Amber on the basis of her disability.  On March 17, 2006, however, the instant action was tabled pending an appeal to the Ninth Circuit Court of Appeals on this Honorable Court's grant of defendants' motion for summary judgment in Mark H. v. Lemahieu, Civil No. 00-00282 MLR/LEK, a similar Section 504 case involving the DOE.  On January 17, 2008, the Ninth Circuit rendered its decision in Mark H. remanding the case back to this Honorable Court.  See Mark H. v. Lemahieu, 513 F.3d 922 (9th Cir. 2008).  On April 17, 2008, a status conference was held in the instant case at which Plaintiffs were ordered to, inter alia, file an amended complaint.

On June 2, 2008, Plaintiffs filed their First Amended Complaint.  See First Amended Complaint, dated June 2, 2008, a true and correct copy of which is attached as Exhibit "E". Plaintiffs allege violations of Section 504 and its implementing regulations, specifically 34 C.F.R. §§ 104.4 and 104.33.  See id. at ¶ 9.  Plaintiffs seek special and general damages for emotional distress, lost wages and other equitable and legal relief.  See id.  Also, in deposition testimony and answers to interrogatories, Plaintiffs have clarified that they are also seeking, inter alia, reimbursement for additional out-of-pocket expenses, including, but not limited to, the purchase of an

automobile.  See Exhibit "D" at pp. 301:14-302-1.  Plaintiffs argue that all these expenses were related to providing Amber an appropriate education.

As more fully set forth infra, Plaintiffs were first required to exhaust administrative remedies before filing the First Amended Complaint.  Because Plaintiffs failed to do so, the First Amended Complaint must be dismissed in its entirety.

## II.  ARGUMENT

### A.  Plaintiffs Must Exhaust Their Administrative Remedies Under the IDEA.

The principal purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . and to ensure that the rights of children with disabilities and parents of such children are protected."  20 U.S.C. § 1400(d). If an individual believes that his or her rights and/or the rights of his or her child under the IDEA are being violated, that individual is required to first exhaust the IDEA's available administrative remedies before filing a civil lawsuit in court. See 20 U.S.C. § 1415(f), (g), and (l); see also Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir. 1992).

The IDEA's exhaustion requirement "embodies the notion that educational agencies, not the courts, ought to have primary responsibility for the educational programs that Congress has

charged them to administer." <u>Hoeft</u>, 967 F.3d at 1303 (quoting <u>McCarthy v. Madigan</u>, 503 U.S. 140 (1992)). Further, it promotes judicial efficiency by providing federal courts, "'generalists with no experience in the educational needs of [disabled] students,'" with expert fact-finding by a state agency devoted to that very purpose. <u>Robb v. Bethel Sch. Dist. #403</u>, 308 F.3d 1047, 1051 (9th Cir. 2002).

Exhaustion of administrative remedies is required whenever a plaintiff is "seeking relief that is <u>also</u> available under IDEA." <u>See</u> 20 U.S.C. § 1415(l)(emphasis added). This is true even when a plaintiff requests relief under a different statute, for example, the Rehabilitation Act. <u>See</u> 20 U.S.C. § 1415(l); <u>Kutasi v. Las Virgenes Unified Sch. Dist.</u>, 494 F.3d 1162, 1167 (9th Cir. 2007).

"Available" relief under the IDEA is broadly defined. It encompasses any "<u>relief suitable to remedy the wrong done [to] the plaintiff</u>, which may not always be relief in the precise form the plaintiff prefers."[3] <u>Robb</u>, 308 F.3d at 1049 (emphasis added). In other words, "when a plaintiff has alleged injuries that could have been redressed <u>to any degree</u> by the IDEA's administrative procedures and remedies, exhaustion of those

_____

[3]    For example, although money damages are not available under the IDEA, a plaintiff cannot avoid the IDEA exhaustion requirement by limiting his/her damages to money damages. <u>Robb v. Bethel Sch. Dist. #403</u>, 308 F.3d 1047, 1049 (9th Cir. 2002).

remedies is required." Id. (emphasis added). This is especially
true when "a plaintiff's injuries are part and parcel of the
educational process." Id. at n. 4. Moreover, "[w]here the
IDEA's ability to remedy a particular injury is unclear,
exhaustion should be required to give the educational agencies an
initial opportunity to ascertain and alleviate the alleged
problem." Id. (emphasis added).

B.    **Plaintiffs' First Amended Complaint Must be Dismissed
      for Failure to Exhaust Administrative Remedies.**

       Plaintiffs request: (1) reimbursement for out-of-pocket
and education-related expenses; (2) payment for wages lost as a
result of having to implement Amber's program; and (3) amendment
of Amber's educational program. Plaintiffs' injuries, and the
requests that flow from it, can all be redressed by the IDEA's
administrative procedures and remedies. As a result, Plaintiffs
were required to first exhaust administrative remedies before
filing their First Amended Complaint. Because Plaintiffs failed
to do so, the First Amended Complaint must be dismissed.

       1.    **Reimbursement for out-of-pocket and education-
             related expenses.**

       Plaintiffs seek reimbursement for expenses incurred to
provide Amber an appropriate education. Plaintiffs also request
reimbursement for monies spent on an additional speech therapist,
"parent consultant," and the purchase of a new Chevy Tahoe SUV.
Plaintiffs argue that these expenses were necessary to provide

Amber an appropriate education, and as a result, reimbursement is necessary to ensure the provision of FAPE.  This issue of reimbursement, however, should have first been presented at the IDEA administrative level.  Because it was not, Plaintiffs' request for reimbursment must be dismissed.

Under the IDEA, parents have an equitable right to reimbursement for the costs of providing an appropriate education when a school district fails to offer a child FAPE.  W.G. v. Bd. of Trustees of Target Range Sch. Dist. No. 23, 960 F.2d 1479, 1485-1486 (9th Cir. 1992)(case has been superseded by statute on an alternative point of law); Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 369-71 (1985).  Indeed, reimbursement has been held proper for costs including, but not limited to, the cost of tuition,[4] transportation expenses,[5] and for time spent by a parent in providing Lovass training to his/her child.[6]

Reimbursement for education-related expenses can clearly be redressed by the IDEA's administrative procedures and remedies.  Indeed, this exact issue was heard and decided at the 1999 Hearing.  The only difference is that now Plaintiffs seek

---

[4]    See Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359 (1985).

[5]    See Moubry v. Independent Sch. Dist. 696, WLY, Minn., 9 F. Supp.2d 1086 (D. Minn. 1998).

[6]    See Bucks County Dep't of Mental Health/Mental Retardation v. Commonwealth of Pennsylvania, 379 F.3d 61 (3d Cir. 2004).

reimbursement for expenses incurred <u>after</u> July 1, 1999.[7]  In fact, the hearing officer briefly addressed this issue of expenses incurred after July 1, 1999.  He stated that "if the parties fail to resolve the issue of [future] educational expenses, . . . <u>either party can request an impartial hearing</u>." <u>See</u> Exhibit "C".  Clearly, this issue of reimbursement can and should have been redressed by the IDEA's administrative procedures and remedies.

Moreover, requiring Plaintiffs to exhaust the IDEA's administrative procedures and remedies will undoubtedly promote judicial efficiency.  The hearing officer will be able to accept evidence, hear testimony, and make factual findings.  He will have the opportunity to closely scrutinize Plaintiffs' request for out-of-pocket expenses to determine whether the expenses were (1) necessary to provide Amber an appropriate education, and (2) actually used for Amber, not her brother Kealoha N., who has a similar in-home program.  At the very least, the hearing officer's findings will provide this Court and both parties with expert guidance as to Plaintiffs' claim for reimbursement.

Based on the foregoing, Plaintiffs' reimbursement claim must be dismissed for failure to exhaust administrative remedies.

---

[7]    To the extent that Plaintiffs are claiming reimbursement for expenses before July 1, 1999, clearly this should have been presented at the 1999 Hearing.  By failing to present these expenses at the 1999 Hearing, Plaintiffs have waived any claim to those expenses.

2.  __Claims for lost wages.__

Parent Plaintiffs assert claims for lost earnings as a result of having to implement Amber's in-home program. For example, Patricia has plead a claim for wage loss based on her decision to quit her job in May 1998 to devote her time to implementing Amber's in-home program. Plaintiffs, however, did not pursue any claims for lost wages at the 1999 Hearing. As Guy stated, "they were not seeking reimbursement for that at that time." See Deposition Transcript of Guy N., dated March 16, 2001, p. 132:11-12, a true and correct copy of which is attached as Exhibit "F"; see also Exhibit "D" at pp. 207:24-208:2. Having made that choice, Plaintiffs cannot now assert that claim herein because they have not exhausted their administrative remedies.

Ninth Circuit law clearly requires a plaintiff to exhaust all administrative remedies if the injury can be "redressed by any degree by the IDEA's administrative procedures and remedies." Robb v. Bethel Sch. Dist. # 403, 308 F.3d 1047, 1050 (9th Cir. 2002). Indeed, this relief does not necessarily need to "be relief in the precise form the plaintiff prefers." Robb, 308 F.3d at 1049.

Plaintiffs obviously would prefer, for example, that Patricia be reimbursed for the yearly salaries she has lost since quitting her job, and in fact, the hearing officer may very well have the authority to order such relief. Nonetheless, other

remedies that are clearly provided for under the IDEA are available to redress Plaintiffs' claim for lost wages. For example, in <u>Bucks County Dep't of Mental Health/Mental Retardation v. Pennsylvania</u>, 379 F.3d 61 (3d Cir. 2004), the Third Circuit Court of Appeals held that a hearing officer's decision to compensate a parent for her time spent providing Lovaas training to her disabled child was proper. The Third Circuit stated that, although this was not a typical reimbursement case in that it did not involve actual out-of-pocket expenses, it was "appropriate" relief under the IDEA. <u>Id.</u> at 69. Clearly, a similar fashioned relief may redress Plaintiffs' injuries in the instant action.

Moreover, and as Plaintiffs readily admit, all they really wanted was for someone to take Patricia's place to implement and run the in-home program so that she could return to work. <u>See</u> Exhibit "F" at p. 128:15-25. A hearing officer has the authority, if warranted, to redress this situation by ordering the appointment of an individual to take over the implementation of the in-home program. Indeed, such relief is the exact type of "identification, evaluation, [and] educational placement" that the IDEA's administrative procedures and remedies were meant to redress. <u>See</u> 20 U.S.C. § 1415(b)(6), (f).

Clearly, Plaintiffs' claims for lost wages can be redressed by the IDEA's administrative procedures and remedies.

- 11 -

The mere fact that Plaintiffs may not be entitled to their preferred relief is not a sufficient basis to circumvent the IDEA's exhaustion requirement.  As a result, because Plaintiffs failed to exhaust available administrative remedies, Plaintiffs' claims for lost wages must be dismissed.

> 3.    **Amending Amber's educational program.**

At the administrative hearing, both parties "stipulated and agreed that the present levels of performance, goals, objectives, and the time amounts of services as set forth in . . . [Amber's] IEPs were appropriate."  <u>See</u> Exhibit "C", Decision and Order at 5.  As a result, to the extent that Plaintiffs now complain that the design of Amber's IEP was inadequate or inappropriate, such a claim must be dismissed for failure to exhaust administrative remedies.

In the First Amended Complaint, Plaintiffs allege that Defendants violated Section 504's implementing regulation, 34 C.F.R. § 104.33.  <u>See</u> First Amended Complaint at ¶9.  34 C.F.R. § 104.33 requires, <u>inter alia</u>, "the provision of an appropriate education is the provision of regular or special education and related aids and services that . . . are <u>designed</u> to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met."  34 C.F.R. § 104.33.  Moreover, as evidenced in deposition testimony, Plaintiffs believe that Amber's IEP is inappropriate, and that it

- 12 -

should be amended to include an additional forty (40) hours of mental health services. <u>See</u> Exhibit "A" at pp. 68:20-69:19; 71:16-72:18.

Clearly, the IDEA's administrative procedures and remedies can redress an individual's request to amend an IEP to increase the services provided and the service hours required. Indeed, such a request for relief concerns the "identification, evaluation, [and] educational placement" of Amber. <u>See</u> 20 U.S.C. § 1415(b)(6). Furthermore, judicial efficiency will be promoted by allowing the hearing officer "the first opportunity to correct shortcomings in their educational programs for disabled students." <u>Robb</u>, 308 F.3d at 1051. At the 1999 Hearing, however, the hearing officer did not address this issue because both parties stipulated to the appropriateness of Amber's IEP. This is despite the fact that Plaintiffs now state that the appropriateness of Amber's IEP was an issue dating back well before the 1999 Hearing. <u>See</u> Exhibit "D" at pp. 206:2-207:6. As a result, if Plaintiffs now complain that Amber's IEP was not appropriate, then clearly that is an issue that must first be presented at the administrative level. Plaintiffs should not be allowed to circumvent the IDEA's administrative procedures and remedies where their own actions precluded the hearing officer from deciding the issue of Amber's IEP at the 1999 Hearing.

C.  **<u>Exhaustion of Administrative Remedies Would Neither be Futile nor Inadequate.</u>**

- 13 -

Plaintiffs will likely argue that they should be excused from the IDEA's exhaustion requirement based on the doctrines of futility and inadequacy of relief.  <u>See</u> <u>Doe v. Arizona Dept. of Educ.</u>, 111 F.3d 678, 681 (9th Cir. 1997).  More specifically, Plaintiffs are likely to argue that:

1.   They exhausted their administrative remedies by applying for and obtaining a favorable decision from the hearing officer and therefore re-application would be futile; and

2.   That the hearing officer lacks authority to provide Plaintiffs with an adequate remedy.

These arguments are clearly misplaced.  While Plaintiffs did apply for and obtain a favorable decision from the hearing officer, Plaintiffs' request for an impartial hearing was limited to the issue of whether Plaintiffs were entitled to reimbursement for education-related expenses incurred before July 1, 1999.  By Plaintiffs crafting their request for an administrative hearing in such a manner, the hearing officer was precluded from addressing the Plaintiffs' claims of lost wages and the inadequate design of Amber's educational program, claims that clearly could have been addressed at that time.  Plaintiffs should not now be allowed to argue futility when their earlier favorable decision did not account for the above claims as a result of their own actions.

At the 1999 Hearing, Plaintiffs did raise the issue of future expenses incurred after July 1, 1999.  However, the

- 14 -

hearing officer expressly denied deciding the issue, instead
directing either party to request another impartial hearing if
both parties could not come to a resolution on their own.
Tellingly, he did not direct either party to file a civil
lawsuit.  Clearly, Plaintiffs' present claim for reimbursement
should first be heard at the administrative level.

Plaintiffs' claims can be fully and adequately
redressed at the administrative level.  Indeed, the hearing
officer has the authority, if necessary, to order (1) the
reimbursement of education-related expenses; (2) the
reimbursement for lost wages; and (3) the amendment of Amber's
IEP.  As a result, the second exception is not applicable to the
instant case.

## III. CONCLUSION

Based on the foregoing, Defendants submit that
Plaintiffs have failed to exhaust their administrative remedies.
As such, Plaintiffs' First Amended Complaint should be dismissed
in its entirety.

DATED:   Honolulu, Hawaii, June 23, 2008.

/s/ Gregg M. Ushiroda
JOHN T. KOMEIJI
GREGG M. USHIRODA
GARY S. SUGANUMA
LEIGHTON M. HARA
ROSS T. SHINYAMA

Attorneys for Defendants

- 15 -