```
 1            IN THE UNITED STATES DISTRICT COURT

 2                     STATE OF HAWAII

 3   PATRICIA N. and GUY N.,        )
     individually and as Guardians  )
 4   Ad Litem of AMBER N., a minor  )
                                    )
 5              Plaintiffs,         )
                                    )
 6         vs.                      ) Civil No. CV00-000252 DAE/LEK
                                    )
 7   PAUL LEMAHIEU, in his official )
     capacity as Superintendent of  )
 8   the Hawaii Public Schools;     )
     BETH SCHIMMELFENNIG, in her    )
 9   official capacity as an        )
     Education Specialist; PHYLLIS  )
10   IDA, in her official capacity  )
     as an employee of the          )
11   Department of Education; and   )
     DEPARTMENT OF EDUCATION,       )
12   State of Hawaii                )
                                    )
13              Defendants.         )
     _____)
```

                DEPOSITION OF PATRICIA N.

        Taken on behalf of the Plaintiffs at the offices of
the Department of the Attorney General, 235 S. Beretania
Street, Honolulu, Hawaii, commencing at 2:02 p.m. on March
16, 2001, pursuant to Notice.

                                            EXHIBIT A

BEFORE:       JESSICA R. PERRY, CSR NO. 404
              Certified Shorthand Reporter

1  do you think that's true, that maybe there should be an
2  additional 40 hours in the IEP to account for the services
3  you provide for your child?
4       A.   I don't think I understand that.
5       Q.   Okay. Well, one of the things that has been
6  mentioned is reimbursement for the lack of pay -- lack of
7  money being brought into the family by you being in the home
8  with the family versus maybe your previous employer, the
9  trading company, and that it appeared like, well, she's at
10 home 40 hours a week doing what the DOE or the state should
11 have been doing in the first place, and as a result of that,
12 that causes our family to lose, essentially, the income of
13 one of our household members, which is you, because the DOE
14 should have someone there for the amount of time my wife is
15 there, which is 40 hours. So following that, since the IEP
16 only says 20 and, in fact, following the way you were talking
17 only ten is only really being done, you being 40, that would
18 increase it up to 50?
19      A.   Correct.
20      Q.   So is it your belief that the IEP is actually not
21 appropriate, and that, in fact, in the ballpark of 50 hours
22 of mental health services should be authorized because you're
23 basically filling up the big gap here?
24      A.   Yes, I'm filling the gap.
25      Q.   And the gap is approximately 40 hours, which causes

1   you to be at home versus in -- you know, working at the
2   trading company or whatever else?
3       A.   Correct.
4       Q.   It's not just the ten we were talking about before,
5   the 20 hours, only ten is happening, right?  So what you
6   would want, then, is what exactly?  Would you want an
7   additional 40 hours of a Discrete Trial trainer?  Is that
8   what you're looking for?
9       A.   I just want the DOE to do what they are supposed to
10  do by law and provide my daughter with a free and appropriate
11  education and at no cost to the parents and time or
12  moneywise.
13      Q.   So, in fact, it would be correct to say you want
14  the court to order the -- in part, the state to authorize an
15  additional 40 hours or so to get an employee of the state or
16  a contractor to come in to basically do what you've been
17  doing, right?  That would be a remedy that you would desire,
18  correct?
19      A.   I would want somebody to do what I'm doing.
20      Q.   Okay.  And -- but could it be someone with the
21  qualifications of the Discrete Trial trainers that you're
22  currently working with?
23      A.   Could it be someone with their qualifications?
24      Q.   Yes.
25      A.   They should tell me.  They should present them to

```
 1      Q.   So you would defer to him.  Would you also defer to
 2 Dr. Siegel?
 3      A.   If the IEP team agreed that she would be the
 4 person.
 5      Q.   I'm not asking about the IEP.  I'm asking about
 6 you.  Would you defer -- because previously you were saying
 7 you would basically look at and see whether or not they could
 8 do what you do.  I'm asking would you defer to someone like a
 9 Dr. Siegel, if Dr. Siegel says, oh, you know, Mrs. Nahale, I
10 really believe so and so Kerina Oshiro can do it, or I
11 believe someone else can do it, you would defer to them,
12 right?
13      A.   Accept the person?
14      Q.   Yeah, more or less or you'd be inclined to, right?
15      A.   Yes.
16      Q.   And this situation in which you've been forced to
17 basically fill the gap in what you believe to be an
18 inadequate IEP, which has been providing 40 less hours than
19 what's really necessary for your child, has been occurring
20 since when?
21      A.   Since, I would say, '97.
22      Q.   And this continuing violation in your mind or
23 inappropriateness in your mind of the IEP has never been
24 remedied, correct?
25      A.   Correct.
```

1   Q.   Even at the due process hearing, correct?

2   A.   Correct.

3   Q.   But at the due process hearing, you didn't really
4   want them to remedy that, did you?

5   A.   It was my understanding that the hearing officer
6   didn't have the ability to remedy that kind of situation.

7   Q.   Oh. Who told you that?

8   A.   That was just my understanding.

9   Q.   From where?

10  A.   I think I heard it from Bruce or Stan or something.

11  Q.   I won't go into it too much, but if the hearing
12  officer did have the authority to do that, you would have
13  wanted him to do it, right?

14  A.   To remedy that situation?

15  Q.   Yeah, by forcing the IEP to be altered to include
16  an additional 40 hours a week, right, and then --

17  A.   Whatever it would take to remedy my situation, our
18  situation, I would want him to do.

19  Q.   And since that due process hearing you've attended
20  several IEPs, I assume, right?

21  A.   Since that --

22  Q.   At least one?

23  A.   Yes, at least one.

24  Q.   But I assume at each of these IEPs you've expressed
25  concern that the IEP is inappropriate, right, because it does

1   recent.
2   Q.   But before that, that's an aberration, I hope?
3   A.   We've had some, you know.
4   Q.   But on the average, with this situation, other
5   situations, typical month, if I were to ask you for in a
6   year, then you're telling me about 48 hours would be on these
7   human resource monitoring issues, right, that's how you get
8   to four hours, right?
9   A.   I don't know.
10  Q.   Well, I mean just an average I'm looking for.  I
11  don't want an aberration number.
12  A.   I don't know.
13  Q.   So four might be wrong?
14  A.   Possibly.
15  Q.   Could be less, could be more?
16  A.   Could be less, could be more, I don't know.
17  Q.   So it could be five hours on average per month?
18  A.   I don't know.
19  Q.   Or even six?
20       MR. LEVIN:  Asked and answered.  She said she
21  doesn't know.
22  Q.   Basically as to this category you're not sure.
23  Next category.
24  A.   I don't know.
25  Q.   Okay.  But I mean you work -- you basically have

1  been in charge of the home program, since when, when in '97?

2  Was it '97?

3      A.   That we did the consult?

4      Q.   No, I mean for what you're doing now, the home

5  program, you know, and running it, you've been doing it since

6  when, approximately?

7      A.   November '97.

8      Q.   Okay.  So as someone -- okay.  And previously you

9  used to be a supervisor at a trading company, right?

10     A.   By the time I quit I was assistant manager.

11     Q.   Assistant manager, which is higher than a

12 supervisor, right?

13     A.   Right.

14     Q.   So you deal with -- you're familiar with dealing

15 with personnel issues and employees and, you know, paperwork

16 basically?

17     A.   Uh-huh.

18     Q.   But you've been in charge of this program,

19 approximately, at least three years.  So have you exhausted

20 your memory as to what the different categories of frequent

21 things are that occur on a daily basis.  And now I've asked

22 you about on a monthly basis, what the average amount of time

23 is, have I exhausted your memory, then, as to those areas?

24     A.   It -- there are other times, but it's maybe not

25 occurring now, but that I've had to do in the past.

```
 1  STATE OF HAWAII              )
 2                               ) ss:
 3  CITY & COUNTY OF HONOLULU    )
 4
 5            I, JESSICA R. PERRY, do hereby certify:
 6            That on March 16, 2001, at 2:02 p.m. appeared
 7  before me PATRICIA NAHALE, the witness whose deposition is
 8  contained herein; that prior to being examined she was by me
 9  duly sworn;
10            That the deposition was taken down by me in
11  machine shorthand and was thereafter reduced to typewritten
12  form by computer-aided transcription; that the foregoing
13  represents, to the best of my ability, a full, true and
14  correct transcript of said deposition.
15            I further certify that I am not attorney for
16  any of the parties hereto, nor in any way concerned with the
17  cause.
18
19            DATED this 26th day of March 2001, in
20  Honolulu, Hawaii.
21
22            [signature]
23  Jessica R. Perry, CSR 404
    Notary Public, State of Hawaii
24  My commission expires: 05/11/03
25
```