```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF HAWAII


PATRICIA N. and GUY N.,          ) CIVIL NO. CV00-000252
individually and as              ) DAE/LEK
Guardians Ad Litem of            )
AMBER N., a minor,               )
                                 )
              Plaintiffs,        )
        vs.                      )
                                 )
PAUL LEMAHIEU, in his            )
official capacity as             )
Superintendent of the            )
Hawaii Public Schools; BETH      )
SCHIMMELFENNIG, in her           )
official capacity as an          )
Education Specialist;            ) CONTINUED DEPOSITION OF
PHYLLIS IDA, in her official     )
capacity as an employee of       ) PATRICIA NAHALE
the Department of Education;     )
and DEPARTMENT OF EDUCATION,     ) VOLUME II
State of Hawaii,                 )
                                 )
              Defendants.        )
_____)
```

Taken on behalf of the Defendants at the State Office Tower, Leiopapa A. Kamehameha, Conference Room 302, 235 Beretania Street, Honolulu, Hawaii 96814, commencing at 10:45 a.m. on Thursday, April 5, 2001.

BEFORE:    MYRLA R. SEGAWA, CSR No. 397
           Notary Public, State of Hawaii

EXHIBIT D

RALPH ROSENBERG COURT REPORTERS, INC.
Honolulu, HI  (808) 524-2090

1  evidence and assumes facts not in evidence.

2      Q.    (By Mr. Schulaner)  At the second IEP,
3  you didn't raise that continuing problem which is
4  they're not providing that approximately 40 hours
5  worth of stuff that you have to do?

6      A.    Right, no, I didn't.

7      Q.    Because you had already determined that
8  they're just going to say no or it would be a waste
9  of energy or that's how they are, you know?

10      MR. LEVIN:  Mischaracterizes the
11  testimony.

12      Q.    (By Mr. Schulaner)  Okay.  How would you
13  characterize it?

14      A.    I don't think, you know, it was like that
15  where there was a conscious thing that I said, you
16  know, okay for this IEP I'm not going to say anything
17  about that because of whatever.  It was those certain
18  issues we're going to discuss and that was, you know.

19      Q.    Okay. So you didn't mention it at that
20  IEP and then I assume you didn't mention it at any
21  subsequent IEP either, right?

22      A.    No, not that I remember.

23      Q.    Okay.  And even at the due process
24  hearing you really didn't mention it either, right?

25      A.    Not that I remember.

1    Q.    But this situation was occurring during
2 the time period involved in the last due process
3 hearing, right?
4    A.    Yes.
5    Q.    And it's still happening now, right?
6    A.    Right.
7    Q.    But now instead of going through an IEP
8 asking for someone to work the 40 hours a week that
9 you do at home or going through a due process hearing
10 asking for reimbursement of the amount of time you
11 put into your child's home program you're suing U.S.
12 District Court for that money, right?
13        MR. LEVIN:   Improper question.  Improper
14 foundation.
15    Q.    (By Mr. Schulaner)  Go ahead.
16    A.    I'm sorry.  I don't understand.
17    Q.    What I'm saying is you never at an IEP
18 meeting asked for approximately 40 hours a week to be
19 added to your child's program?
20    A.    Correct.
21    Q.    Or for something comparable to allow you
22 to be able to get back into the work force, correct?
23    A.    Correct.
24    Q.    And also you have not filed a due process
25 hearing which you've asked for reimbursement of the

1  services that you provided to your child?

2      A.    Correct.

3      Q.    It is now in this form, this case in U.S.
4  District Court that you're asking for basically
5  reimbursement for the amount of time you spent with
6  your child which you equate to be equivalent to the
7  value of the work you would have done at your former
8  employer?

9      MR. LEVIN:  Ambiguous, vague.  Assumes
10 facts not in evidence.

11     Q.    (By Mr. Schulaner)  Go ahead.

12     A.    I'm not really sure.

13     Q.    What I'm saying --

14     A.    So are we asking anybody now is what
15 you're saying to do this?

16     Q.    Okay.  We've established that IEP's you
17 haven't asked for an extra 40 hours or for some kind
18 of way in order to remedy the current situation which
19 is you're at home when you could be out in the work
20 force bringing in the previous amount of money that
21 you used to work?

22     A.    Okay.

23     Q.    We've established that.  The next thing
24 is we've established that you haven't, at a due
25 process hearing, you haven't asked for a due process

1    A.    A what?

2    Q.    You could always do another hearing.  The
3 request just showed your ability to deal with this
4 letter of March 27.

5    A.    No, I mean within the scope of --

6    Q.    Of the original one, right?

7    MR. LEVIN:  Let her finish, Aaron.

8    Q.    (By Mr. Schulaner)  Okay.  Go ahead.

9    A.    No, that was -- remember we talked about
10 the last time and that was my understanding about
11 that.

12    Q.    So I'm just asking you is your
13 understanding that you could, in fact, file a due
14 process hearing to get reimbursed for the amount of
15 the value of your services that you delivered to your
16 child?

17    MR. LEVIN:  Aaron, she said no because it
18 was beyond the scope of the Hearing Officer.

19    Q.    (By Mr. Schulaner)  Is that what you're
20 saying?

21    A.    Yes, because the last time that I said
22 that that I didn't think that that was --

23    Q.    So but you didn't believe it was beyond
24 the scope of the Hearing Officer to address Autism
25 Partnership, right, at their cost, right?

1    A.    Did I believe it was beyond his scope?

2    Q.    Yes.

3    A.    No.

4    Q.    And you wouldn't believe it beyond his or her scope to force the DOE to reimburse TIFFE or Nurse Finders if they weren't paying them for a couple of months, right, for services?

8    A.    I would have to guess, but I wouldn't think that that would be beyond.

10   Q.    But when it comes to you delivering services to your child, you think it's beyond, right?

12   A.    Yeah, that was my understanding.

13   Q.    Why is that?

14   A.    Because we said that's what I heard from my attorney.

16   Q.    Oh, okay. I won't go into that.

17   A.    That's what you said the last time too.

18   Q.    But before whatever transpired with your attorney, you would have thought you would have been able to do that?

21   A.    Actually, I don't know.

22   Q.    You don't know, that's fine. Okay. Let's move on to a different area though. By the way, though, through the due process hearing process through exhausting it, you were able to get

1  getting a free appropriate public education, right?
2  Your family had to do, in addition to the home, I
3  don't know if they had to put an air conditioning
4  because of sound for Amber, something like that?
5       A.    For all the reimbursement expenses
6  that -- I think you lost me.
7       Q.    Let me ask you something here.  You got
8  that list which is 3,000 odd dollars.
9       A.    Right.
10      Q.    And you got another group of money which
11 is pain and suffering one point whatever million
12 dollars.
13      A.    Okay.
14      Q.    Then you have this spreadsheet and I've
15 seen different spreadsheets between $100,000 and
16 $200,000?
17      A.    Okay.
18      Q.    And you have things on it like car or
19 truck or whatever, how to sell a car or the payments
20 for the Tahoe, right?
21      A.    Okay.
22      Q.    And then the argument is well, we need
23 the Tahoe in order to transport the child because
24 transportation is something that's necessary in order
25 to implement the child's IEP, right?

1       A.      Okay.

2       Q.      And then you have stuff like maybe
3  additions or remodeling of the house in order to
4  design an in-home therapy room or what have you,
5  whatever you want to call it.

6       A.      No, I mean it was like the table, the
7  chairs.

8       Q.      But there are things like that that you
9  need in order to implement the child's IEP, right?

10      A.      Right.

11      Q.      Are those in that list of $3,000?

12      A.      No.

13      Q.      No, they're not but those are expenses
14 that you needed to expend in order for your child's
15 program to be implemented, right?

16      A.      Right.

17      Q.      You bought the chairs because you needed
18 it for the program, right?

19      A.      Right.

20      Q.      And you're making payments on the vehicle
21 so you can transport the child in order to implement
22 the program, right?

23              MR. LEVIN:  Chairs and therapy room have
24 been reimbursed already.

25      Q.      (By Mr. Schulaner)  Well, why don't we

355

```
 1                    C E R T I F I C A T E

 2  STATE OF HAWAII              )
                                 )  SS:
 3  CITY AND COUNTY OF HONOLULU  )

 4           I, MYRLA R. SEGAWA, Notary Public, State of

 5  Hawaii, do hereby certify:

 6           That on Thursday, April 5, 2001, at

 7  10:45 a.m., appeared before me PATRICIA NAHALE, the

 8  witness whose deposition is contained herein; that

 9  prior to being examined she was by me duly sworn;

10           That the deposition was taken down by me in

11  machine shorthand and was thereafter reduced to

12  typewriting under my supervision; that the foregoing

13  represents, to the best of my ability, a true and

14  correct transcript of the proceedings had in the

15  foregoing matter.

16           I further certify that I am not an attorney

17  for any of the parties hereto, nor in any way

18  concerned with the cause.

19           DATED this  10th  day of  APRIL  2001, in

20  Honolulu, Hawaii.

21

22
                        _____
23                      MYRLA R. SEGAWA, CSR No. 397
                        Notary Public, State of Hawaii
24                      My Commission Exp: 1-27-2005

25
```

RALPH ROSENBERG COURT REPORTERS, INC.
Honolulu, HI   (808) 524-2090