IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| PATRICIA N. and GUY N., Individually and on behalf of their minor daughter AMBER N., | ) ) ) ) | CIVIL NO. CV00-00252 MLR-LEK (Other Civil Action) |
| | ) | **MEMORANDUM IN SUPPORT OF MOTION** |
|       Plaintiffs, | ) ) | |
|    vs. | ) ) | |
| PATRICIA HAMAMOTO, in her official capacity as Superintendent of the Hawaii Department of Education; DEPARTMENT OF EDUCATION, STATE OF HAWAII | ) ) ) ) ) ) | |
|       Defendants. | ) ) | |

# TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 1

II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   Ms. Bateman's Opinions Do Not Assist the Trier
          of Fact   . . . . . . . . . . . . . . . . . . . . . 3

     B.   Ms. Bateman's Opinions Are Not Products of Reliable
          Principles or Methods . . . . . . . . . . . . . . . 8

     C.   Ms. Bateman's Opinions Are Not Based on Sufficient
          Facts or Data . . . . . . . . . . . . . . . . . . . 15

III.      CONCLUSION  . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

**CASE**                                                                    **PAGE**

Barnes v. Gorman, 536 U.S. 181 (2002) . . . . . . . . . 12, 13

Elsayed Mukhater v. California State Univ. Hayward,
299 F.3d 1053, 1066 n. 10 (9th Cir. 2002) . . . . . . . . . . 4

GPF Waikiki Galleria, LLC v. DFS Group, L.P.,
2007 WL 3195089 at *5 (D. Haw. 2007) . . . . . . . . . . 4, 5

Lust v. Merrel Dow Pharm., Inc.,
89 F.3d 594, 598 (9th Cir. 1996) . . . . . . . . . . . . 8, 9

Mark H. v. Lemahieu,
513 F.3d 922, 938 (9th Cir. 2008) . . . . . . . 1, 6, 11, 12, 15

Patricia N. v. Lemahieu,
141 F. Supp.2d 1243 (D. Haw. 2001) . . . . . . . 1, 7, 10, 15

Steven L., et al. v. Lemahieu et al.,
Civ. No. 00-00338 (MLR/LEK) . . . . . . . . . . . 1, 6, 16

U.S. v. 87.98 Acres of Land More or Less in the
County of Merced, __ F.3d __, 2008 WL 2498113 at *2
(9th Cir. June 24, 2008) . . . . . . . . . . . . . . . . . 8

United States v. Duncan,
42 F.3d 97 (2d Cir. 1994) . . . . . . . . . . . . . . . . 4

W.B. v. Matula, 67 F.3d 484 (3d Cir. 1995) . . . . . 10, 11, 12


**FEDERAL RULES OF EVIDENCE**

Rule 702 . . . . . . . . . . . . . . . . . . . 2, 3, 4, 8, 15


**MISCELLANEOUS**

§ 504 . . . . . . . . . . . . . . . . 1, 2, 5, 6, 7, 10, 11,
. . . . . . . . . . . . . . . . . . . 12, 13, 14, 15, 16

## MEMORANDUM IN SUPPORT OF MOTION

Defendants PATRICIA HAMAMOTO and DEPARTMENT OF
EDUCATION ("DOE")(collectively, "Defendants"), by and through
thier attorneys, WATANABE ING LLP, submit the following
Memorandum in Support of their Motion to Preclude the Testimony
of Barbara Bateman.

## I.   INTRODUCTION

Plaintiffs have retained Barbara Bateman, Ph.D., J.D.,
("Ms. Bateman") as an expert witness in the following three
cases: Mark H., et al. v. Lemahieu, et al., Civ. No. 00-00282
(MLR/LEK)(the "Mark H. Case"); Steven L., et al. v. Lemahieu et
al., Civ. No. 00-00338 (MLR/LEK)(the "Steven L. Case"); and
Patricia N., et al. v. Lemahieu et al., Civ. No. 00-00252
(MLR/LEK)(the "Patricia N. Case).  Her purpose, and the opinions
she is expected to offer, are identical in all three cases.  Ms.
Bateman is expected to opine on, inter alia, her interpretation
of the applicable IDEA and Section 504 law, her application of
the law to the relevant facts, and her legal conclusions, e.g.,
whether the disabled child was provided "meaningful access" and
whether the DOE acted with "deliberate indifference."

Ms. Bateman proclaims that she is an expert in IDEA and
Section 504 law.  See Deposition Transcript of Barbara Bateman in
the Mark H. Case, dated June 5, 2008 at p. 20, lns. 1-16, a true
and correct copy of which is attached as Exhibit "A".  She
received her Juris Doctor from the University of Oregon in 1976.

<u>See</u> Curriculum Vitae of Barbara Bateman, a true and correct copy of which is attached as Exhibit "B". Also, according to her curriculum vitae, she has been a private legal consultant in special education since 1994. <u>See</u> Exhibit "B". Ms. Bateman, however, is not a licensed attorney as she has never taken the bar exam. <u>See</u> Exhibit "A" at p. 130, lns. 7-17.

Notwithstanding the fact that Ms. Bateman is not a licensed attorney, it is clear that Ms. Bateman's opinions consist of legal opinions and conclusions that are not admissible under Federal Rules of Evidence ("FRE") Rule 702. Her legal opinions and conclusions do not "assist" the trier of fact, but rather, invade the province of the judge as the sole arbiter of the law, and usurp the role of the jury as the trier of fact. Moreover, Ms. Bateman's legal opinions and conclusions are not products of reliable principles or methods. At the very least, an expert in Section 504 and IDEA law should be up-to-date as to recent case law. Further, a Section 504 and IDEA law expert should have reviewed case law relevant to the circuit in which she is offering an opinion. As evidenced <u>supra</u>, however, Ms. Bateman has not done either. Finally, Ms. Bateman's legal opinions and conclusions are not based on sufficient facts and data. As more fully set forth below, Ms. Bateman is unaware of certain crucial facts - facts that are essential to consider before coming to any legal conclusions in the instant case. As a

result, Ms. Bateman's opinions should be precluded at trial
pursuant to FRE Rule 702.

## II.  ARGUMENT

Expert testimony is governed FRE Rule 702, which
states:

> If scientific, technical, or other
> specialized knowledge will assist the trier
> of fact to understand the evidence or to
> determine a fact in issue, a witness
> qualified as an expert by knowledge, skill,
> experience, training, or education, may
> testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony
> is the product of reliable principles or
> methods, and (3) the witness has applied the
> principles and methods reliably to the facts
> of the case.

Fed. R. Evid. 702.

As more fully set forth below, Ms. Bateman's testimony
fails to meet the requirements of admissible expert testimony
under FRE Rule 702.  First, her opinions are legal conclusions
that do not "assist" the trier of fact.  Second, Ms. Bateman's
opinions are not products of reliable principles or methods.
Finally, Ms. Bateman's opinions are not based on sufficient facts
or data.

### A.  Ms. Bateman's Opinions Do Not Assist the Trier of Fact.

By its plain language, FRE Rule 702 allows an expert to
testify if her specialized knowledge will "assist" the trier of
fact.  Even expert testimony regarding an ultimate issue of fact

- 3 -

will be allowed as long as it assists the trier of fact.  <u>See</u>

Fed. R. Evid. 704(a)(stating that expert testimony "otherwise

admissible is not objectionable because it embraces an ultimate

issue to be decided by the trier of fact").

FRE Rule 702, however, prohibits expert witnesses from

giving "an opinion as to their **legal conclusion**, <u>i.e.</u>, an opinion

on an ultimate issue of law."  <u>Elsayed Mukhater v. California</u>

<u>State Univ. Hayward</u>, 299 F.3d 1053, 1066 n. 10 (9th Cir.

2002)(citing as an example <u>United States v. Duncan</u>, 42 F.3d 97

(2d Cir. 1994))(emphasis in original). As the <u>Duncan</u> court aptly

observed:

> Generally, the use of expert testimony is not
> permitted if it will "usurp either the role
> of the trial judge in instructing the jury as
> to the applicable law or the role of the jury
> in applying that law to the facts before it."
> When an expert undertakes to tell the jury
> what result to reach, this does not aid the
> jury in making a decision, but rather
> attempts to substitute the expert's judgment
> for the jury's.  When this occurs, the expert
> acts outside of his limited role of providing
> the groundwork in the form of an opinion to
> enable the jury to make its own informed
> determination.  **In evaluating the
> admissibility of expert testimony, this Court
> requires the exclusion of testimony which
> states a legal conclusion.**

<u>United States v. Duncan</u>, 42 F.3d at 101 (citations
omitted)(emphasis added).

Thus, "[c]ourts have prohibited 'expert legal opinion

on questions of law' because that 'interferes with the judge's

role as the "sole arbiter of the law."'"  <u>GPF Waikiki Galleria,</u>

- 4 -

<u>LLC v. DFS Group, L.P.</u>, 2007 WL 3195089 at *5 (D. Haw. 2007)(citations omitted).  Further, "[c]ourts also 'have prohibited expert opinion that applies the law to the facts, as this usurps the role of the jury.'" <u>Id.</u>

      Ms. Bateman's opinions are clearly legal conclusions. Indeed, she opines the following in her expert reports:

- "[T]he non-autism specific programs did not allow Natalie and Michelle any meaningful access to education." <u>See</u> Report of Barbara Bateman for Michelle H. and Natalie H. at 5, dated May 29, 2008, a true and correct copy of which is attached as Exhibit "C".

- "Thus the programs these girls received were not designed to meet their needs at all."  <u>See</u> Exhibit "C" at 5.

- "[Aaron's special education services] did not provide him with meaningful access to education." <u>See</u> Report of Barbara Bateman for Aaron L. at 4, dated May 30, 2008, a true and correct copy of which is attached as Exhibit "D".

- "Aaron's years of so-called special education services did not provide him with a program designed to meet his needs as well as those of his non-disabled peers were met."  <u>See</u> Exhibit "D" at 4.

- "Amber [N.] was denied FAPE under § 504."  <u>See</u> Report of Barbara Bateman for Amber N., dated May 25, 2008, a true and correct copy of which is attached as Exhibit "E".

- "[Amber N.'s] education was not designed to meet her educational needs as adequately as the needs of the non-disabled are met."  <u>See</u> Exhibit "E".

Further evidence of the fact that Ms. Bateman is offering legal conclusions can be found in the deposition transcripts.  For example, Ms. Bateman testified:

(By Mr. Ushiroda)

> Q:    Doctor, are you going to render an
>       opinion on whether the defendants
>       alleged -- well, the defendants alleged
>       failure to provide speech and behavior
>       services to Aaron constituted deliberate
>       indifference?
>
> A:    If I'm asked, I will render that
>       opinion.
>
> Q:    Okay.  And sitting here today, do you
>       have such an opinion?
>
> A:    Yes, I do.  They knew they weren't
>       providing the services, and they
>       continued to not provide, to me that's
>       indifferent and deliberate and knowing.

See Deposition Transcript of Barbara Bateman in the Steven L. Case, dated June 6, 2008 at p. 218, lns. 11-20, a true and correct copy of which is attached as Exhibit "F".[1]

Whether "meaningful access" was denied, whether education programs were designed to meet the needs of the disabled child as adequately as the needs of the non-disabled are

---

[1]    Ms. Bateman's opinion on "deliberate indifference" is particularly troubling as it concerns the requisite *mens rea* to warrant money damages under Section 504.  See Mark H. v. Lemahieu, 513 F.3d 922, 938 (9th Cir. 2008).  In effect, Ms. Bateman's testimony may compel the jury to conclude that the DOE did or did not possess the requisite mens rea.  Clearly, this encroaches on the jury's vital and exclusive function to make credibility determinations.

- 6 -

met, whether there was a denial of FAPE under Section 504, and whether the DOE acted with "deliberate indifference" are all ultimate issues of law in the instant case. Indeed, by coming to legal conclusions on these issues of law, Ms. Bateman's opinions usurp the role of the jury. As a result, her opinions are inadmissible legal conclusions.

Ms. Bateman's previous expert reports also evidence the fact that her opinions invade the province of the judge as the sole arbiter of the law. For example, in her January 16, 2001 report in the Patricia N. Case, Ms. Bateman goes through a lengthy discussion detailing her interpretation of Section 504 and the IDEA, including certain case law. See generally Report of Barbara Bateman in Patricia N. Case, dated January 16, 2001, a true and correct copy of which is attached as Exhibit "G". Ms. Bateman's discussion, however, is a mere regurgitation of case law. Clearly, this is not the type of specialized knowledge that will assist the trier of fact. Further, and as articulated supra, there is but one arbiter of the law, and that is the judge. It should be the judge, and only the judge, that educates the jury as to the relevant law. To allow Ms. Bateman, an "expert" retained by Plaintiffs, to also educate the jury on the law would clearly be unduly prejudicial to the Defendants.

As a result, the threshold requirement that expert testimony "assist" the trier of fact - in this instance, the

- 7 -

jury[2] - cannot be met with respect to Ms. Bateman's opinion testimony. Ms. Bateman's opinions do not address facts in issue in this litigation, but, rather, address the legal standards by which the facts should be judged, and asserts inadmissible legal conclusions. This invades the province of the jury as the ultimate trier of fact. Further, there is but one arbiter of the law, and that is the Court not Ms. Bateman. As a result, Ms. Bateman's opinion are inadmissible under FRE Rule 702, and should be precluded at trial.

### B. Ms. Bateman's Opinions Are Not Products of Reliable Principles or Methods.

Notwithstanding the fact that expert legal testimony is not permitted under FRE Rule 702, <u>see</u> <u>supra</u>, Ms. Bateman's opinions fail to satisfy the standards for admissible expert testimony because they are not the product of reliable principles or methods. As the Ninth Circuit has articulated, the proponent of expert testimony bears "the burden to establish its admissibility." <u>U.S. v. 87.98 Acres of Land More or Less in the County of Merced</u>, __ F.3d __, 2008 WL 2498113 at *2 (9th Cir. June 24, 2008)(citing <u>Lust v. Merrel Dow Pharm., Inc.</u>, 89 F.3d

---

[2]    The burden imposed on the proponent of expert testimony is heightened in a jury trial compared to that of a bench trial. This is because a judge, as a result of experience and education, is able to filter through law and determine what is a reliable interpretation of the law, and what is relevant. A jury, on the other hand, is not afforded the luxury of the same education and experience. Indeed, this is the reason why a judge is the sole arbiter of the law.

594, 598 (9th Cir. 1996).  Plaintiffs cannot meet this burden.

In the rare circumstance wherein legal opinions are admissible, it is expected, at the very least, that the expert offering such opinions would have reviewed recent case law. Further, it should be expected that the expert would be knowledgeable as to the applicable case law in the circuit in which she is proffering an opinion.  Ms. Bateman, however, fails to meet even this minimal requirements.  As she testified in her deposition:

(By Mr. Ushiroda)

> Q: Okay.  Are you aware of -- sitting here today, are you aware of any other reports or information that if you review, might result in changing or modifying your opinions?
>
> \*      \*      \*
>
> A: Yes.
>
> Q: What would that be?
>
> A: **I would hope that were I to review pertinent case law, I would have an opinion about the Ninth Circuit and the deliberate indifferent standard more specific and knowledgeable than I have today.**
>
> Q: Okay.  And would this be with respect to your opinions rendered in this case, as well as the other two cases we have?
>
> A: Not at all.  **This is just in respect to bringing to my attention the fact that that's an area where I'm not nearly as knowledgeable as I should be.**

- 9 -

See Deposition Transcript of Barbara Bateman in the Patricia N.
Case, dated June 7, 2008 at pp. 165:16-166:9, a true and correct
copy of which is attached as Exhibit "H" (emphases added).

      Moreover, in her January 16, 2001 report in the
Patricia N. case, Ms. Bateman states "[t]he 3rd Circuit has held
that under § 504, discrimination need to be intentional in order
to be compensable." See Exhibit "G" at 6. In support, Ms.
Bateman cites W.B. v. Matula, 67 F.3d 484 (3d Cir. 1995), a case
that was decided over twelve years ago. The particularly
troubling part of Ms. Bateman's opinion, however, is the fact
that she has no idea whether Matula is still good law. As she
testified:

    (By Mr. Ushiroda)

> Q:   Okay. Now, the second--the sentence
> following that, it says "the Third
> Circuit has held that under Section 504,
> discrimination need not be intentional
> in order to be compensable." And you
> cite the WB versus Matula case.
>
> A:   Yes.
>
> Q:   Is that--does that still hold true.
>
> A:   I already responded to that. **I would
> have to look at more recent case law to
> evaluate that statement or to know what
> my present opinion is.**

See Exhibit "H" at pp. 58:23-59:7 (emphasis added).

      Further, when questioned as to whether the approach
taken by the Third Circuit in Matula has been adopted by the

- 10 -

Ninth Circuit, Ms. Bateman was unable to simply answer "yes" or

"no."  Instead, she stated the following:

(By Mr. Ushiroda)

> Q:   Do you have an understanding of what the
> Ninth Circuit holds on this particular
> issue, or would you ever [sic] to do
> more research?
>
> A:   Well, it seems to me that deliberate
> indifference, whatever that means, is--
> is a standard that the Ninth has
> embraced.

See Exhibit "H" at p. 59, lns. 8:13.

When further questioned as to what cases support her

conclusion that the "deliberate indifference" standard has been

adopted by the Ninth Circuit, Ms. Bateman stated, "[a]

combination of - Wiles-Bond and Mark H."  See Exhibit "H" at p.

61, lns. 6-7.  First, Wiles-Bond is not a Ninth Circuit decision.

Second, Wiles-Bond and Mark H., while adopting the standard of

"deliberate indifference," do not adopt Matula's holding that

"discrimination need not be intentional to be compensable."  See

supra.  As the Mark H. court stated, "we have held that

plaintiffs must prove a mens rea of 'intentional discrimination,'

to prevail on a § 504 claim."  Mark H. v. Lemahieu, 513 F.3d 922,

938 (9th Cir. 2008).  The Matula decision has not been adopted by

the Ninth Circuit.  A simple review of Ninth Circuit case law

would have alerted Ms. Bateman to this fact.[3]  However, as she has testified, Ms. Bateman has not reviewed recent case law on the issue.  In fact, based on the testimony of Ms. Bateman, and beyond the Mark H. and Wiles-Bond decisions, it is reasonable to conclude that Ms. Bateman has not reviewed relevant case law since the Matula decision rendered in 1995.

Ms. Bateman's lack of knowledge regarding the law applicable to the instant case is further evidenced by her inability to testify as to whether punitive damages were available under Section 504.  Ms. Bateman stated:

(By Mr. Ushiroda)

Q:   Are punitive damages still available under 504?

A.   **I would have to look at case law that I haven't seen yet.  I would have to look at the most recent case law before I would say that.**

See Exhibit "H" at pp. 47:23-48:1 (emphasis added).

Ms. Bateman's lack of knowledge concerning this issue is particularly striking considering that the United States Supreme Court's often cited decision in Barnes v. Gorman, 536

---

[3]      Ironically, Ms. Bateman should have been able to answer Mr. Ushiroda's question on whether the Ninth Circuit shares the same view as the Third Circuit as articulated in the Matula case considering the fact that she had already reviewed the Mark H. decision prior to her deposition.  The fact that she was unable to affirmatively and unequivocally answer Mr. Ushiroda's question calls into question her ability to adequately interpret applicable case law.

- 12 -

U.S. 181 (2002), precluding the recovery of punitive damages for claims brought under Section 504, was decided six years ago. <u>Barnes</u> is not, as Ms. Bateman characterizes it, a "recent case law" decision.

It is also evident that Ms. Bateman's opinions are not based on sufficiently reasonable methodologies. In fact, during her deposition, Ms. Bateman could not even testify as to the basis of her opinions. For example, Ms. Bateman stated:

> (By Mr. Ushiroda)
>
> Q:   Okay. Section 504 discusses meaningful access; is that correct?
>
> A:   The -- the term is -- is used, yeah?
>
> Q:   How is it used in 504, your basis -- your understanding?
>
> A:   Well, it's in Accommodation. Reasonable accommodations are those accommodations which are required to allow meaningful access in contrast to simply allowing physical access.
>
> Q:   Okay. And that's -- you gleaned that from reading Section 504?
>
> A:   **I don't know if I gleaned it from there, or if I gleaned it from the English language, and took it to 504. I don't know.**

<u>See</u> Exhibit "A" at pp. 170:14-171:2.

The standard of "meaningful access" is a legal term of art that has been defined in numerous Ninth Circuit and United States Supreme Court decisions. Any legal opinions allowed to be

- 13 -

offered regarding this standard should, at the very least, start with the statutory interpretation of Section 504, and the abundant case law discussing it. Ms. Bateman, however, has testified that she does not know where her understanding of "meaningful access" is derived from. Instead, she states that it may have been "gleaned . . . from the English language."

As a preliminary matter, inability of Ms. Bateman to articulate the basis for her opinions shows that the methodology by which she reaches her opinions is not sufficiently reliable. Further, to the extent that her understanding of "meaningful access" is merely "gleaned from the English language," it is certainly not the type of "specialized knowledge" that requires expert testimony to assist the trier of fact.

Defendants respectfully submit that Ms. Bateman should be precluded from offering expert testimony or legal opinions at trial. At the very least, Ms. Bateman should have reviewed, analyzed, and interpreted recent relevant case law. Indeed, an individual that holds herself out as an expert in IDEA and Section 504 law should be doing this regardless of whether she has been retained to render an expert opinion. Strikingly, however, Ms. Bateman, despite having ample notice that the DOE was going to question her on her opinions, nevertheless failed to review any recent relevant case law. In fact, based on her deposition, it seems that Ms. Bateman has not done any legal

research since the <u>Matula</u> case in 1995, beyond having been provided with the <u>Mark H.</u> and <u>Wiles-Bond</u> decisions by Plaintiffs' counsel.  As a result, Defendants respectfully submit that Ms. Bateman's legal opinions are not products of reliable principles or methods, and thus should not be permitted at trial.

### C.    Ms. Bateman's Opinions Are Not Based on Sufficient Facts or Data.

Additionally, Ms. Bateman's opinion testimony is inadmissible because it is not based on sufficient facts or data. FRE Rule 702 provides that a witness may offer expert opinions only "if . . . the testimony is based upon sufficient facts or data."  Fed. R. Evid. 702.  In offering her opinions, however, it is clear that Ms. Bateman was not privy to many relevant facts.

"Good faith" efforts on the part of the DOE bars recovery under Section 504.  In <u>Patricia N. v. Lemahieu</u>, 141 F. Supp.2d 1243 (D. Haw. 2001), Judge Ezra held that Plaintiffs were not entitled to judgment as a matter of law with respect to Section 504 liability.  As Judge Ezra articulated, "there still remain questions as to whether this failure [to provide an IDEA FAPE] rises to the level of 'deliberate indifference.'" <u>Id.</u> at 1258.  Indeed, Judge Ezra stated that there is evidence that "could indicate that Defendants, in good faith, believed that they were providing [IDEA] FAPE to Amber . . . , thus barring recovery under § 504." <u>Id.</u>  Ms. Bateman's testimony shows, however, that in coming to her conclusion that the DOE acted with

deliberate indifference, Ms. Bateman did not account for any good-faith efforts on the part of the DOE. This lack of accounting was despite the fact that Ms. Bateman reviewed Judge Ezra's Order, and thus should have been aware that good-faith efforts on the part of the DOE was a defense. See Exhibit "A" at p. 181, lns. 20-25. As Ms. Bateman testified:

> (By Mr. Ushiroda)
>
> Q:   Now, are you aware of any facts that would- that indicate that the DOE made a good-faith effort to provide Amber - I mean, Michelle and Natalie with autism-specific services?
>
> *       *       *
>
> A:   No, I'm not aware of any good-faith efforts they made.

See Exhibit "A" at pp. 179:24-180:5.[4]

Further evidence of Ms. Bateman's lack of facts concerning an essential part of any determination of Section 504 liability was adduced in her deposition in the Steven L. Case, wherein she testified as follows:

---

[4]     Strikingly, Ms. Bateman is of the opinion that good faith is not a defense to deliberate indifference. As she testified in her deposition, "How could good faith be a defense to deliberate indifference? That doesn't make sense." See Exhibit "A" at p. 182, lns. 4-5. Ms. Bateman's statement calls into question not only her knowledge of Section 504 law, but also her understanding of the law of the case. It is yet another example why her legal opinions are not reliable and should not be permitted at trial.

Q:    Okay. Do you know if the DOE made any
      efforts to recruit teachers--qualified
      teachers to go to Molokai?

A:    I don't have any specific knowledge of
      efforts that were made except that they
      were, by an large, not successful,
      whatever they may have been or not.

Q:    **As part of your assignment on this case,
      were you asked to look into efforts made
      by the DOE to recruit qualified
      teachers--special education teachers to
      go to Molokai?**

A:    **No.**

See Exhibit "F" at p. 164, lns. 5-15 (emphasis added).

Ms. Bateman's inadmissible legal opinions are, as her testimony shows, based upon insufficient facts or data. Indeed, it is impossible for Ms. Bateman to render a reliable legal opinion where she not been provided, and has failed to gather facts concerning a relevant defense. As a result, Ms. Bateman's legal opinions are not only based upon insufficient facts or data, but also upon a "cherry-picked," Plaintiff-slanted view of the facts. Accordingly, these opinions should not be permitted at trial.

III. <u>CONCLUSION</u>

Based upon the foregoing and upon argument to be presented at the hearing, Defendants respectfully request that this Court grant the instant Motion to Preclude the Testimony of Barbara Bateman. Specifically, Defendants respectfully request

that Plaintiffs be precluded from presenting at trial any opinions of Ms. Bateman, including, but not limited to, legal opinions, legal conclusions, interpretations of the law, and/or application of the law to the relevant facts in each respective case.

DATED:  Honolulu, Hawaii, July 28, 2008.


/s/ Gregg M. Ushiroda
GREGG M. USHIRODA
GARY S. SUGANUMA
LEIGHTON M. HARA
ROSS T. SHINYAMA

MARK J. BENNETT
GEORGE S.S. HOM
HOLLY T. SHIKADA

Attorneys for Defendants