```
 1              IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF HAWAII
 3
 4   MARK H. and RIE H.,            )
     individually, and as Guardians )
 5   Ad Litem of MICHELLE H. and    )
     NATALIE H., minors,            )
 6                                  )
                 Plaintiffs,        )
 7                                  )
           vs.                      ) No. CV 00-00282 MLR-LEK
 8                                  )
     PAUL LEMAHIEU, in his official )
 9   capacity as Superintendant of  )
     the Hawaii Public Schools;     )
10   ELISE TANAKA, in her official  )
     capacity as Principal of Kipapa)
11   Elementary School; JUDITH      )
     SARAN-CHOCK, in her official   )
12   capacity as Principal of Ala   )
     Wai Elementary School; PETER   )
13   CHUN, in his official capacity )
     as Principal of Hokulani       )
14   Elementary School; HAROLDEEN   )
     WAKIDA, in her official        )
15   capacity as Principal of       )
     Aliiolani Elementary School;   )
16   and DEPARTMENT OF EDUCATION,   )
     STATE OF HAWAII,               )
17                                  )
                 Defendants.        )
18   _____)
19         DEPOSITION OF BARBARA BATEMAN, Ph.D., J.D.
20                    MILLBRAE, CALIFORNIA
21                       JUNE 5, 2008
22   ATKINSON-BAKER, INC.
     COURT REPORTERS
23   (800) 288-3376
     www.depo.com
24
     REPORTED BY: JANE H. STULLER, CSR No. 7223, RPR
25   FILE NO.: A20466C
```

CERTIFIED COPY

EXHIBIT A

1

1       Okay. Now, you got your J.D. from the
2  University of Oregon in 1976, correct?
3       A.  Yes.
4       Q.  Are you a member of the Oregon Bar?
5       A.  No. I've never taken the bar exam, because in
6  those days the prohibition against advertising was still
7  very -- attorneys were not allowed to advertise areas of
8  specialization. And I only wanted to do special ed law,
9  and I just didn't understand -- I didn't see any way
10 that I would be allowed to do that.
11      And by the time the ban on advertising was
12 gone, I was already well established. I'd been a
13 hearing officer by then. I had been representing
14 parents in hearing and had begun some expert witness
15 work, so at that point there was no need to take the
16 bar.
17      Q.  Okay.
18      A.  So I've never done it.
19      Q.  Okay. You said you represented parents at
20 hearings?
21      A.  Yes.
22      Q.  These are the due process hearings?
23      A.  Yes. In special ed under IDEA.
24      Q.  Okay. Did you need to be a licensed attorney?
25      A.  Absolutely not, no. And you still don't in any

1  parents didn't get that, that it was free to them.

2         Anyway, yes, you may certainly call it FAPE if

3  you want.  And I know what you mean.

4     Q.  Okay.  We seem to be on the same waive length,

5  so I think we understand each other, yes.

6     A.  I think we're getting there.

7     Q.  Okay.  So that's good.  Now, Doctor, I

8  understand that you are very familiar with the law

9  pertaining to Section 504 of the Rehabilitation Act of

10 1973, correct?

11    A.  Yes.

12    Q.  And you are familiar with the law pertaining to

13 IDEA, as well, correct?

14    A.  Yes.

15    Q.  And you would hold yourself as an expert on the

16 law in both areas?

17    A.  Yes.  Although, more so in IDEA than 504.

18    Q.  Okay.  Is that because you are more involved in

19 at the do-process level than, say, at the other levels?

20    A.  That's part of it.  But it's also because in

21 teaching special education law for so long, IDEA has

22 many more detailed educational implications.  So we

23 always set aside some time for 504.  And in later years,

24 ADA, but it was never the focus like IDEA was.

25    Q.  What is your general understanding of Section

1     A.   As far as I know, it is.

2     Q.   Okay.  Is that -- oh, I'm sorry.  Were you

3  about to add something?

4     A.   I'm not aware of people using it any

5  differently in either one.

6     Q.   Okay.  And your explanation of what meaningful

7  access is, is that based on your understanding and

8  knowledge of Section 504?

9     A.   That would be included in my basis.  There,

10 indeed, are -- are cases that have spoken of meaningful

11 access.  And I -- I can't say, at this point, whether

12 they're simply consistent with what I just told you, or

13 whether I've derived what I told you from them.

14    Q.   Okay.  Section 504 discusses meaningful access;

15 is that correct?

16    A.   The -- the term is -- is used, yeah?

17    Q.   How is it used in 504, your basis -- your

18 understanding?

19    A.   Well, it's in Accommodation.  Reasonable

20 accommodations are those accommodations which are

21 required to allow meaningful access in contrast to

22 simply allowing physical access.

23    Q.   Okay.  And that's -- you gleaned that from

24 reading Section 504?

25    A.   I don't know if I gleaned it from there, or if

1  I gleaned it from the English language, and took it to
2  504. I don't know.
3      Q. Okay. Now, when you say similarly in the last
4  paragraph, the nonautistic programs did not allow
5  Natalie and Michelle any meaningful access to education
6  during those years.
7      Just so we're very clear, when you say "those"
8  here, you're talking about '94 to '99?
9      A. Correct.
10     Q. Okay. Then you conclude: Furthermore, their
11 access to education is still limited because of their
12 deficit in communication and socialization.
13     Now, is that as a result of their current
14 deficits, they just -- they can't access the educational
15 -- educational opportunities because of their deficits
16 in socialization and communication?
17     MR. LEVIN: Objection; vague as to the term
18 "current."
19     MR. USHIRODA: Now.
20     THE WITNESS: Their access is limited because
21 they don't communicate and/or socialize.
22 BY MR. USHIRODA:
23     Q. If they had had the appropriate autism-specific
24 services during the years in question, would they be
25 able to communicate and access education?

171

```
 1   in 1994 and not know about the autism-specific programs
 2   that had been developed.  It's not possible.
 3        Q.  Okay.  At the time in 1994, who was responsible
 4   for providing the autism-specific services?
 5        A.  You mean, in the chain of command at DOE?
 6        Q.  Yes.
 7        A.  I don't recall names of people 14 years ago.  I
 8   don't know.
 9        Q.  In 1994, what role did the Department of Health
10   play in providing autism-specific services?
11        A.  The Felix Consent Decree, as I recall -- I
12   believe that was in October of 1994.  Okay.  So at that
13   time, DOE had been under statutory law.  They had been
14   responsible for providing those programs for some time.
15   Under the Felix Descent -- Consent Decree, it became
16   evident to one and all that DOE was responsible.
17            Now, DOH, of course, as any other agency is
18   allowed under contractual or other agreements with DOE,
19   to be a service provider.  But DOE was ultimately
20   responsible at that time.  And if DOH failed in some of
21   its duties, it was up to DOE to make sure that,
22   nevertheless, the kids were provided with the
23   appropriate services.
24        Q.  Now, are you aware of any facts that would --
25   that indicate that the DOE made a good-faith effort to
```

```
 1   provide Amber -- I mean, Michelle and Natalie with
 2   autism-specific services?
 3           MR. LEVIN:  Objection; asked and answered.
 4           THE WITNESS:  No.  I'm not aware of any
 5   good-faith efforts they made.
 6   BY MR. USHIRODA:
 7       Q.  Do you know if there were a finding of good
 8   faith on the part of the defendants in this case, would
 9   that precluded recovery under Section 504 of the
10   Rehabilitation Act?
11           MR. LEVIN:  Objection; irrelevant question.
12           Instruct the witness not to answer.
13           MR. USHIRODA:  You can instruct, but she's not
14   your witness.
15           THE WITNESS:  You're asking if good faith is a
16   defense to deliberate indifference?
17   BY MR. USHIRODA:
18       Q.  Yes.  If you -- let's assume that the
19   defendants believed, in good faith, they were providing
20   FAPE to Michelle and Natalie.  Would that bar recovery
21   under Section 504?
22           MR. LEVIN:  Objection; facts -- assumes facts
23   in evidence, not an appropriate hypothetical.
24   BY MR. USHIRODA:
25       Q.  I ask because you're being proffered as an
```

1  expert under the law -- under IDE and 504 law.
2     A.  I don't know the answer to that.  I don't know
3  that it's been settled.  To me, what would make sense
4  would be how reasonable was it for someone, in a
5  position of that kind of authority at that point in
6  time, to claim a good-faith defense; that is, I just
7  didn't know.
8         And when it's not reasonable, I don't believe
9  that that would possibly be a defense.  And it is my
10 view that it was not reasonable in 1994 for a DOE
11 employee, at any level related to autism, to claim they
12 thought Kipapa -- that they thought Kipapa was an
13 autism-specific program.
14    Q.  Okay.  So the short answer is, no, you don't
15 know?
16    A.  That's part of the answer.
17    Q.  Okay.  What's -- and the other part is what you
18 have just explained?
19    A.  Correct.
20    Q.  Okay.  Did you read Judge Ezra's decision
21 issued in Patricia N v. Lemahieu?
22    A.  That's the Nahale case.
23    Q.  Yes.
24    A.  Yes.  I believe I've read Ezra's decision.  I'm
25 -- I'm not positive.  I've read all the decisions that

REPORTER'S CERTIFICATE

I, JANE H. STULLER, CSR No. 7223, Certified Shorthand Reporter, certify;

That the foregoing proceedings were taken before me at the time and place therein set forth, at which time the witness was put under oath by me:

That the testimony of the witness and all objections made at the time of the examination were recorded stenographically by me and were thereafter transcribed; that the foregoing is a true and correct transcript of my shorthand notes so taken.

I further certify that I am not a relative or employee of any attorney or of any of the parties, nor financially interested in the action.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Dated this 5TH day of June, 2008.

_____
JANE H. STULLER, CSR NO. 7223