**Barbara Bateman, Ph.D., J.D.**
Legal Consultant in Special Education

Aaron L▓▓▓ (B.D. ▓▓1981)
Report Date (5/30/2008)

This report on Aaron L▓▓▓ is based on a home visit with both parents and Aaron on 5/20/08, my deposition of 2/17/2000 <u>In the Matter of Aaron L▓▓▓</u>, the hearing officer's decision in <u>Aaron L▓▓▓ v. DOE Hawai'i</u> dated 3/15/2000, Dr. Lucker's Consultation Reports of 9/15/03 and 3/31/04, my earlier report dated 6/16/03, and Dr. LeGoff's 4/23/04 Report. Recollections of earlier documents underlying these may also have been utilized, without conscious memory.

DOE was found to have denied a litany of entitlements to Aaron L▓▓▓, a Moloka'i student who has Down Syndrome. These denials were and are sadly life-altering. During his schooling on Moloka'i Aaron was denied certified and/or trained aides and teachers. As of October 1999 only 2 of the 10 special education teachers (another source indicates 0 of 11) at Moloka'i High School were certified. Aaron was slated through his IEPs to receive essential speech and language therapy, but he did not receive it, even though his inability to communicate was and is a major factor limiting the quality of his life and that of his entire family. Aaron was also in dire need of mental health services, most especially a behavior intervention plan. Such a plan was strongly recommended for years, beginning in 1992, and was essential to enable him to respond appropriately to those attempting to educate and otherwise work with him. He never received those services. Aaron was not educated with non-disabled students even though DOE never demonstrated that integration could not be achieved satisfactorily [see 34 CFR 104.34(a)] with supplementary aids and services. One tentative effort to mainstream him in an agriculture class was thwarted by the class instructor who didn't want him in class when written work was involved.

---

32223 DeBerry Road
Creswell, OR 97426-9717
Phone: 541-895-3858

**EXHIBIT D**

Aaron's high school special education classroom was all but barren. At his desk, isolated in a corner of the room, he had a few worksheets, two short pencils and a container of beads (probably for stringing). No adults worked with him or attempted to do so during the hours of my original observation. An aide (serving as the teacher) was in the room but she never approached or spoke to him. Unfortunately, Aaron was and is quite content to sit or stand staring into space. During the five year period of his high school attendance, Aaron never mastered even one goal on his individualized education programs (IEPs).

On May 20, 2008 Aaron's father told me that Aaron has given up most efforts to communicate and thus is less frustrated than when he tried to make himself understood. Aaron presently lives with his mother on O'ahu, while his father commutes as often as possible between Moloka'i and O'ahu. In order for Aaron to have any kind of post-school program it was necessary for him to come to O'ahu and he could not live independently. So his mother has to live with him there. Three days a week he has a 1:1 aide program which incorporates some exercise and some "volunteering". The other two days he has small group (about 6 persons) activities which include work on personal goals such as crossing streets safely, knowing name and phone number, etc. In the past he did some filing by color (he cannot read) in an office. His mother reports that currently Aaron enjoys parties and time with one of his male aides.

Had Aaron received the services he was entitled to - - e.g. speech/language therapy and special education with trained, qualified staff, and mental health services and /or a behavior intervention plan and more - - his present and future life would in all likelihood have been more independent. Similarly, had the services he needed and to which he was entitled been provided and the parent training and counseling to which his parents were entitled been provided, their present life situation would be different and far better. As it is now, Aaron's needs dictate that he and one parent live on O'ahu while the other parent remains on the home island of Moloka'i. Aaron may or may not have ever lived completely independently, however, had the services he needed and the law demanded been provided he may very well have been far closer to independent.

Verbal communication was always very difficult for Aaron, as it often is for many who have Down Syndrome. He urgently needed early and intensive 1:1 or small group speech and language therapy with a qualified and experienced therapist. He also needed a well designed and

consistently implemented behavior intervention plan to teach him compliance and cooperation rather than his pervasive pattern of total, passive resistance and non-compliance. His resistance and non-cooperation combined to make the limited education that was offered to him all but totally inaccessible. Aaron's former teacher and friend of the family testified that Aaron made no progress after 6th grade. This was when his passive resistance and non-compliance solidified.

"Appropriate" education under §504 can include general education, special education and related services. In Aaron's case the failure to provide two essential related services - - speech and language therapy and mental health (behavior intervention plan) services - - denied Aaron meaningful access to the special education, limited and inadequate as it was, that was offered to him. Similarly and more directly he was denied access to general education for many years. The failure to provide for educational and/or extracurricular activities in the least restrictive environment (i.e., a failure to mainstream him) resulted in a denial of access to general education.

"Meaningful access" to education is a vital concept. To have meaningful access one must have physical and mental access, i.e., be "in the door" and have the prerequisite learning to grasp and benefit from the educational offering. Meaningful access to Math 502, Calculus II, requires mastery or nearly so, of Math 401, Calculus I. For Aaron to have meaningful access to any education in a classroom above a primary grade he would have needed to read at or near grade level (or to have comprehended the meaning had it been read to him), to write more than his first name, to express his ideas, needs, reactions in more than one word semi-intelligible mutterings, to participate in class activities such as a social studies role play, a science experiment, a physical education game, a spelling bee and more, but he could not. Aaron had no meaningful access to an education.

A direct comparison of the design of Aaron's program to meet his needs versus how well the needs of the non-disabled are met is difficult because to the near total implementation failures of Aaron's programs (IEPs) year after year. Aaron's IEPs were, in fact, mere fictions. Surely the §504 regulation requiring the program for Aaron be "designed to meet the needs of the disabled as well as the needs of the non-disabled are met" cannot reasonably be understood to mean that we can prepare fantasy-land IEPs, not implement them, and then compare the "all needs met"

fictional IEP to what happens in the real world for students who have no disabilities. When an IEP is not implemented surely the comparison must be between what is actually received by the disabled student and what is given to otherwise similarly situated non-disabled students.

Had Aaron not had a disability he would have received the educational services designed for non-disabled students - - appropriate age/grade level texts, workbooks, quizzes, tests, qualified and trained teachers and aides at each grade level, equipment and supplies as needed for art, science, mathematics and more, maps, appropriate furniture, opportunity for socialization with peers, playground and athletic equipment, teachers who have ongoing professional development and perhaps most important of all, Aaron's progress or lack of it would have been monitored regularly.

General education continually monitors students' progress. Why is this so? If a student's progress is not adequate to meet projected grade level goals that fact will soon, if not immediately, be known and appropriate action taken. General education students have daily work, weekly quizzes, teacher-made tests, standardized tests, projects, grades and more, all of which are monitored and form the basis for report cards and for notice to parents and others when a student's progress is not sufficient. When progress is insufficient, action is taken. That action could include changing the grouping within the classroom, moving the student to a different classroom, retention, assigning a 'study buddy', recommending that the parents obtain a tutor or having the student attend summer school, etc.

Aaron's progress - - actually, lack thereof - -was not monitored at all. It could be inferred from the lack of progress in meeting IEP goals that he made little or no progress. However, the goals and objectives were, in fact, not measurable and were so vague that had an effort been made to assess progress, it would have been futile. That failing alone, is a denial of FAPE.

In sum, Aaron's years of so-called special education services did not provide him with a program designed to meet his needs as well as those of his non-disabled peers were met. Furthermore, it did not provide him with meaningful access to education. In short, Aaron L████'s program on Moloka'i was as near a total failure as a program can be.