**Barbara Bateman, Ph.D., J.D.**

Legal Consultant in Special Education

Amber N▆▆ (B.D. ▆▆/95)
Report Date (5/25/08)

In preparing this report I have relied upon (a) a two hour interview with Patty N▆▆, Amber's mother held on May 19th, 2008; (b) a three hour observation of Amber in her classroom at Keolu School and in her home; (c) my report on Amber dated 7/9/03; (d) my deposition of 10/18/99; (e) Dr. Houck's report of 11/03; and (f) the Hearing Officer's decision of 2/2/00. In addition, I have relied upon more than 50 years of experience in special education and general education, ranging from state institutions to public school classrooms and from first grade to university doctoral level programs. Since 1976, when I graduated from law school, my primary focus has been on special education law, especially the implementation of IDEA and §504 by public schools. (Resume attached.)

Amber N▆▆ was born ▆▆/95 and diagnosed with autism two years later, on 4/10/97. Her first Individualized Family Service Plan (IFSP) was developed on 9/29/97 and her first Individual Education Program (IEP) on 1/13/98. Both teams approved and included for Amber in these documents a home program of 1:1 discrete trial training (DTT), an important technique using applied behavior analysis (ABA). DOE refused to pay the necessary expenses involved in establishing and implementing the home program. A Hearing Officer ruled in February 2000 that the refusal denied FAPE and that the parents were entitled to reimbursement. Amber is now 13 years old. She attends public school and also enjoys a daily after-school program which includes community excursions.

---

32223 DeBerry Road
Creswell, OR 97426-9717
Phone: 541-895-3858

**EXHIBIT E**

My understanding is that I have been asked to comment on the N▓▓ facts in light of §504 of the Rehabilitation Act of 1973, whereas the context of the earlier report and observations was IDEA. The key facts include these:

1. The parents indicated on 9/29/97 they were seeking reimbursement for the home program which was part of Amber's IFSP.
2. No reimbursement for the home program (on the IFSP and the later IEP) was provided by DOE, even though the program was deemed appropriate by the IFSP team and the IEP team.
3. DOE did not respond to the N▓▓'s written requests for reimbursement, including their written request of 7/2/99 to Dr. Paul LeMahieu. The refusals to reimburse were always oral, never written.

DOE did not notify the N▓▓s of DOE's duty under Subpart D (34CFR 104.32) to provide Amber with an appropriate education at no cost to parents (34CFR 104.33 (c)(1)). It was only by a chance encounter with other parents that they learned of their entitlement. It was then they wrote to Supt. LeMahieu (with copies to many DOE officials) and never received a response from anyone. Notice is one of the procedural requirements of 34CFR104.36 and therefore is an essential part of FAPE, which is defined at 34CFR 104.33(b)(l)(ii) and which requires adherence to the procedural requirements of 34CFR 104.36. The parents were never given notice that DOE was refusing to pay for Amber's in-home program nor were they notified of the basis for the refusal.

Amber's need for a free appropriate public education is as great or greater than that of non-disabled children. Yet her home program, first included in her IFSP and then in her IEP, was not free. The parents were expected to pay, and did, for all aspects of the program – teachers and aides and their training, programs, materials, reinforcers, furniture, computer, consultants, and much more. It is as if a public school were to say to parents of non-disabled children "You can bring your child to school if you wish, but you will have to provide the desk, texts, supplies, science equipment, physical education equipment, teacher salaries chalkboards, library books, audio-visual equipment, etc. ... A program that is not designed to be free cannot, obviously, meet the disabled student's needs as adequately as a similar and free program would meet the needs of the non-disabled.

Meaningful access to the services Amber N▇▇ needed was significantly hampered and impeded by DOE's failure to provide them at no cost to the parents. In the parents' own words "The payment of items for Amber's educational needs continue to be a hardship on our family, as it has since the beginning… Simply speaking, we have exhausted our personal funds and are no longer able to finance Amber's education" (Letter to Supt. Paul LeMahieu). One of the most effective ways to deny access by disabled persons to a government service is to put a price tag on it that the disabled person cannot afford, especially when the service is free to non-disabled.

In conclusion, Amber N▇▇ was denied FAPE under §504 inasmuch as (1) her necessary education was not free (2) her parents were never given written notice of DOE's refusal to pay for the program (3) her education was not designed to meet her educational needs as adequately as the needs of the non-disabled are met and (4) Amber was denied access to her education, but for the Herculean effort of her parents.