OF COUNSEL:
DAVIS LEVIN LIVINGSTON

STANLEY E. LEVIN            1152-0
MICHAEL K. LIVINGSTON    4161-0
ANNE L. WILLIAMS           1662-0
851 Fort Street Mall, Suite 400
Honolulu, Hawaii 96813
Telephone: (808) 524-7500
Fax: (808) 545-7802

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PATRICIA N. and GUY N., individually and on behalf of their minor daughter, AMBER N.,<br><br>Plaintiffs,<br><br>vs.<br><br>PATRICIA HAMAMOTO, in her official capacity as Superintendent of the Hawaii Department of Education; DEPARTMENT OF EDUCATION, STATE OF HAWAII,<br><br>Defendants. | Civil No. CV00-00252 MLR/LEK (Other Civil Action)<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE THE TESTIMONY OF BARBARA BATEMAN; DECLARATION OF STANLEY E. LEVIN; EXHIBIT "A" AND CERTIFICATE OF SERVICE<br><br>HEARING: September 11, 2008<br>TIME:        10:00 a.m.<br>JUDGE:     MANUEL L. REAL |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO PRECLUDE THE
<u>TESTIMONY OF BARBARA BATEMAN</u>**

**I.     INTRODUCTION**

Dr. Barbara Bateman is a nationally recognized expert in special education – the education of children with learning disabilities. Her expertise is at both the individual level (what are the needs of the learning disabled child and what reasonable accommodations can or must be offered to afford the child meaningful access to education) and at the systemic level (policies and practices related to special education) as a review of her curriculum vita readily discloses. She has written, researched and taught on the design and implementation of educational programs for disabled children as a professor at the University of Oregon, and has authored numerous books and chapters on the subject. Her experience spans fifty years in the field of special education, and includes work as a consultant in every state in the union, including Hawaii. See Defendants' Exhibit "B". She also has extensive experience in evaluating children's progress in academics.

Yet, the Defendants now seeks to strike Dr. Bateman in three cases[1], before this Court has had the opportunity to listen to testimony at trial with regard to her qualifications or opinions, by attempting to cast her as someone who will offer only legal conclusions, claiming she is not up to date on "recent relevant case law" and that she is basing her opinion on inaccurate data. It cherry picks her reports, and ignores huge portions of her depositions, and relies on its own questioning of

---

[1] Defendants have filed the same motion and memorandum in three factually distinct cases: Mark H. v. Hamamoto, Civ. 00-282 MLR/LEK, Patricia N. v. Hamamoto, Civ. 00-252 MLR/LEK, and Stephen L. v. Hamamoto, Civ. No. 00-338 MLR/LEK. Plaintiffs are *not* filing the same memorandum in opposition in each of the three cases.

2

this witness – rather than the questions Plaintiffs will frame at trial – to suggest that her testimony is nothing more than an intrusion on the province of the court or an attempt to improperly instruct the jury on the law.  This is a serious mischaracterization of her proposed testimony.  In fact, Dr. Bateman has substantial specialized knowledge in the field of special education that will assist the trier of fact here to understand the evidence and to determine the facts at issue in this case, and Plaintiffs is entitled to present her testimony at trial.

## II.   BACKGROUND

As set forth in the Amended Complaint in this case, Amber N. is a young woman with autism, who as a result of the Herculean efforts of her parents, received an appropriate education.  The problem in this case was that her educational program, though specially designed for her in an individualized program, was never implemented by the Defendant.  Because time was of the essence, Amber's parents filled the void and provided her education in their home at their own physical, mental and practical expense.  They repeatedly sought to have the Defendant provide Amber with the services she required, but it repeatedly failed and refused to do so.

## III.   ANALYSIS

**A.   Rules of Evidence Related to Expert Witnesses**

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

This rule does not preclude experts from testifying on the ultimate issues in the case. To the contrary, Rule 704 of the Federal Rules of Evidence provides in pertinent part:

> **(a)** Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Thus, the fundamental premise of the Defendant's motion is wrong. Dr. Bateman may state her final opinions, embracing the ultimate issues for the jury, so long as the opinion is not otherwise objectionable.

### B.   Use of Expert Witnesses on Reasonable Accommodation Issues.

The *Mark H.* court explicitly instructed the "a public entity can be liable for damages under Section 504 if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). It also clearly stated that a showing of discriminatory animus is not required: "we have held that plaintiffs must prove a mens rea of "intentional discrimination," to prevail on a Section 504 claim,

but that that standard may be met by showing "deliberate indifference," and not only by showing "discriminatory animus." *See Mark H.,* 513 F.3d at 938; *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *id.* at 1130 (deliberate indifference is "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.*

Thus both "meaningful access or reasonable accommodation" of Amber to a free appropriate public education and "deliberate indifference" are key issues in this case. The question of "reasonable accommodation" typically involves expert testimony. *See, e.g., Duvall v. County of Kitsap*, 260 F.3d 1124, 1137 (9th cir. 2001)("We have observed that "mere speculation that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; the Acts create a duty to gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary...." *Wong v. Regents of the University of California,* 192 F.3d 807, 818 (9th Cir.1999)). Cf. *Stern v. University of Osteopathic Medicine and Health Sciences***, 220 F.3d 906, 909 (8th Cir. 2000)**("We conclude that expert opinion is necessary here because neither the average layperson nor this court can determine without expert assistance the nature of dyslexia and what measures would actually address Mr. Stern's needs").

Expert testimony is thus highly relevant to what accommodations could and should reasonably have been made available for Amber in light of her disabilities. Based on her extensive special education experience, including extensive experience with children with Down Syndrome, Dr. Bateman's testimony in her deposition and at trial directly addresses what reasonable accommodations Amber needed in light of her disabilities, as well as what reasonable accommodations he did not receive and the effects this had on her and her family. For instance, she explains unique behavior therapies in autism, and that children with autism need to be taught compliance and imitation and independent play and spontaneous vocalization. Ex. A at 51. As an highly experienced educator, her testimony on the steps that the Defendant should have taken in response to the Amber's parents many requests for free implementation of Amber's program will assist the jury. *See, e.g.*, Ex. A at page 84, 97. Her explanation of the many things that were provided free to public school students, and not to Amber, will also assist the jury. See, e.g. Ex. A at page 101, 124-125. Her explanation of what it takes to learn and implement a discrete trial training program as a parent will be extremely useful to the jury. *See, e.g*. Ex. A. at 132, 138-139. Her testimony as an educator that it is virtually impossible that any educator would not know that a DOE program had to be free is important for the jury to hear in the context of the deliberate indifference issue. *See, e.g.* Ex. A at 140. All of this testimony is clearly within the scope of

the rules of evidence set forth above, and will be helpful to a jury. These are but a few examples of many areas in which Dr. Bateman will be able to assist the trier of fact.

Instead of focusing on the opinions, and bases for opinions, that Dr. Bateman will give, the Defendant emphasizes her knowledge of case law as reflected in a report written some eight years ago, on January 16, 2001. See Def. Mem. at 8. Dr. Bateman explained at her deposition that she did not remember writing, or even recently reviewing that report. *See, e.g.* Ex. A at 140. She was careful to explain that the report was written in the context of the Individuals with Disabilities Act, not Section 504, and that it should be viewed now through the Section 504 lens. *Id.* at 22. She also explained that it reflected things as they were on January 16, 2001, not today. *Id.* at 47. *See Mark H.*, 513 F. 3d at 924 ("The parties and the district court have assumed throughout this litigation that a violation of the IDEA statutory FAPE requirement necessarily constitutes a violation of the § 504 regulations' FAPE requirement, an understandable assumption given the use of identical language. As we develop below, however, this assumption is wrong. The FAPE requirements in the IDEA and in the § 504 regulations are, in fact, overlapping but different."). Thus, to the extent that her report from 2001 dealt with a free appropriate public education under the IDEA (including case law under IDEA), it is no longer relevant and certainly cannot be

7

used as a grounds to strike Dr. Bateman's expert testimony on the issues currently pending for the trier of fact as Defendant attempts to do here.

The Defendant also suggests that Dr. Bateman's testimony is unreliable. Def. Mem. at 17.  However,

> "Rule 702 on its face creates no general power in the trial judge to exclude expert testimony on the grounds it is unreliable.  This reflects basic policies of the Evidence Rules in several respects.  First, it is typical of the Rules' liberal approach toward admiisibility to limit the gatekeeping powers of the trial judge. … Second, the absence of a reliability requirement for admission affirms that the power to evaluate the credibility of witnesses and give testimony its proper weight primarily resides with the trier of fact."

Wright & Gold, Federal Practice and Procedure:  Evidence Sec. 6262 at 184-185 (1997).  In this case, the fact that Dr. Bateman is testifying as an expert in special education, and has unparalleled experience in the field, is more than sufficient to satisfy this Court's gate keeping duties.

### C. Dr. Bateman is not being offered as an expert in case or statutory law.

A great deal of Defendants' criticism of Dr. Bateman is that she is not a legal expert, and is not up to date on case law.   Def. Mem. at 9-16.  It bases this criticism of Dr. Bateman on its own questions to her, such as "Are punitive damages still available under Section 504?" which are obviously not questions that would be asked an expert at trial.  If such questions were posed at trial, the Defendants would of course have ample opportunity to object.

8

## IV. CONCLUSION

The Defendants' motion is without merit and should be denied. Defendants have misleadingly cherry-picked Dr. Bateman's expert reports and testimony to suggest that she will testify on case law or statutes, when in fact she will testify on Amber's needs, reasonable accommodations that could have been but were not provided to her at no cost, and the effect this had on Amber and her family. She bases her opinions on over fifty years of experience in the field of special education, as a teacher, professor and consultant. Her testimony falls strictly within the bounds of the rules of evidence, and should be allowed.

DATED: Honolulu, Hawaii, August 22, 2008.

/S/ STANLEY E. LEVIN
_____
STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
ANNE L. WILLIAMS
SUSAN K. DORSEY
KEITH H.S. PECK

Attorneys for Plaintiffs