OF COUNSEL:
DAVIS LEVIN LIVINGSTON

STANLEY E. LEVIN          1152-0
MICHAEL K. LIVINGSTON   4161-0
ANNE L. WILLIAMS          1662-0
851 Fort Street Mall, Suite 400
Honolulu, Hawaii  96813
Telephone:  (808) 524-7500
Fax:  (808) 545-7802

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PATRICIA N. and GUY N., individually and on behalf of their minor daughter, AMBER N., <br><br> Plaintiffs, <br><br> vs. <br><br> PATRICIA HAMAMOTO, in her official capacity as Superintendent of the Hawaii Department of Education; DEPARTMENT OF EDUCATION, STATE OF HAWAII, <br><br> Defendants. | CIVIL NO. CV00-00252 MLR/LEK (Other Civil Action) <br><br> PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS DEPARTMENT OF EDUCATION AND PATRICIA HAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, FILED JUNE 2, 2008, FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND CERTIFICATE OF SERVICE <br><br> HEARING:  September 11, 2008 <br> TIME:        10:00 a.m. <br> JUDGE:      MANUEL L. REAL |

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS DEPARTMENT OF EDUCATION AND PATRICIA
HAMAMOTO'S MOTION TO DISMISS PLAINTIFFS' FIRST
AMENDED COMPLAINT, FILED JUNE 2, 2008, FOR FAILURE
TO EXHAUST ADMINISTRATIVE REMEDIES

## I.     INTRODUCTION

Plaintiffs Patricia and Guy Nahale have sued the defendants for the emotional distress, physical pain and suffering, and financial losses they and their daughter Amber, a child with autism,  suffered directly as a result of Defendants' deliberate violation of their rights under Section 504, 20 U.S.C. Sec. 794(a). Although Amber had an Individualized Education Program (IEP), the DOE refused to implement the plan for almost two years.  Unlike other public school children, Amber had no trained teachers, curriculum, or supplies despite her IEPs.  Read liberally, Plaintiffs' amended complaint alleges that, because of her disability, Defendants failed to provide Amber any meaningful access to public education from November 1997 through the date of the administrative hearing decision in February of 2000, despite the Plaintiffs' undisputed right to a free appropriate public education for her.

Given Amber's exclusion from public education, Amber's parents stepped in to educate Amber, at tremendous physical, emotional, and financial cost to themselves and to Amber.  First Amended Complaint at ¶¶ 28-43, 46-48.  After completing the administrative hearing process seeking implementation of the IEPs, they brought this action seeking the full panoply of remedies accorded under Section 504.  They are not seeking in this action any remedy that could have been awarded by the hearing officer in the administrative Individuals with Education

Act hearing that proceeded it. They have *not* sued to recover the costs of a Chevy Tahoe, to alter or amend Amber's educational program or gain additional personnel for Amber's program, or for compensation of either parents' time in providing the services to Amber that the State had agreed to but failed to provide. Certainly Defendants have pointed to no allegations in the Amended Complaint seeking such relief, and Plaintiffs expressly disavow seeking it.

Nonetheless, despite the lack of any allegations in the First Amended Complaint seeking such relief, Defendants now move *for the second time* to dismiss the complaint herein on the sole grounds that the Plaintiffs have failed to exhaust their administrative remedies with respect to a Chevy Tahoe, the amendment of Amber's educational  program to include different personnel and services, and compensation for the parent's time in providing Amber's program. It should be noted that this case was originally commenced in 2000, almost eight years ago, and the Defendants made a very similar motion to dismiss in 2004. Defendants have also previously moved to dismiss the complaint on the grounds that plaintiffs failed to present sufficient evidence of discrimination prohibited by Section 504, a motion denied by this Court. *See Patricia N. v. LeMahieu*, 141 F.Supp. 1243, 1254-1255 (D. Haw. 2001).

Given the claims that the parents are actually making, not as misrepresented by the Defendants, Plaintiffs have in fact sufficiently exhausted their IDEA

remedies because they did indeed file for and complete an IDEA administrative hearing relating to the educational disputes between the parties. First Amended Complaint at ¶¶ 43-45. *See Mark H. v. LeMahieu*, 513 F.3d at 935 n. 11, *Wiles v. Department of Education*, __ F.Supp.2d __, 2008 WL 1912467 at *14 (D. Haw. 2008)(asserting IDEA violations at the administrative level is sufficient to satisfy the exhaustion requirement with respect to claims under Sec. 504, including retaliation); *Blanchard v. Morton School District*, 420 F.3d 918, 921-922 (9th Cir. 2005)(where the plaintiff has resolved the educational issues implicated by the child's disabilities and obtained the educational relief available under the IDEA on behalf of the child, exhaustion is not required because the parents' emotional distress injuries and lost income could not be remedied through the educational remedies available under the IDEA).

Under controlling Ninth Circuit law, the instant motion is without merit and should be dismissed.

## II.    BACKGROUND

### A.  Factual Background

The factual background of this case is set out in the prior decision of this court, *Patricia N. v. LeMahieu*, 141 F.Supp. 1243, 1254-1255 (D. Haw. 2001), as well as in the Plaintiffs' Concise Statement of Material Fact in Support of Plaintiffs' Motion for Summary Judgment filed on August 24, 2004.

The essential facts as alleged in the Amended Complaint, which must be considered true for the purpose of this motion, are these. In 1997, when Amber was two (2) years old, she was diagnosed as autistic, and was certified as eligible for the Zero to Three Program administered by the Department of Health, State of Hawaii ("DOH"), which is a program developed to meet DOE's early education responsibilities under federal law.  Amended Complaint at ¶ 15.  The DOE had ultimate responsibility under Federal and State law for compliance with the provisions of Section 504 in connection with the State of Hawaii's special education programs, including but not limited to the Zero to Three Program.  *Id.* at ¶ 16.

At the time of her diagnosis with autism in 1997, Amber was non-verbal with extremely limited social skills.  The DOE knew she was a child with autism so severe that she require and was entitled to receive an intensive early intervention program, comprised of many hours per week of work provided by specialized skills trainers. *Id.* at ¶¶ 17-21.

In Amber's Individualized Family Service Plan ("IFSP"), developed beginning in September of 1997, it was agreed that Amber would receive discrete trial training services, which is an autism specific methodology, and that the services would be delivered in her home.  Id. at ¶ 25.

Amber was found eligible for special education services from DOE in November of 1997. The services under an Individualized Education Program ("IEP") were to begin when Amber turned three years of age. Amber's January 1998 IEP required that Amber receive 20 hours per week of "mental health services in home," consisting of a discrete trial training program, and also recognized the need for autism specific services in school. Id. at ¶¶ 25-28.

Despite its IFSP and IEP agreements, DOE failed and refused to provide essential elements of the discrete trial training program required by Amber's 1997 IFSP and 1998 IEP, including but not limited to furniture, curriculum, materials, supplies and reinforcers, and on-going consultations to modify or change the program as necessary, as well as personnel and training necessary to implement the program. Id. at ¶¶ 28-29. Yet, it did provide those items to non-disabled students.

Guy and Patricia N. made repeated requests that the programs prescribed for Amber in her 1997 IFSP and 1998 IEP be implemented as required by law, but DOE deliberately and repeatedly failed and refused to do so. Id. at ¶¶ 29, 31. Because time was of the essence in providing the agreed upon program to Amber, Guy and Patricia N. raised money by having garage sales, by selling their car, by withdrawing all funds from their deferred compensation programs, and through gifts and substantial loans from family members. Guy and Patricia N. used these funds to pay for the supplies, furniture, reinforcers and equipment required to

implement Amber's IEP program.  They also personally trained and supervised personnel to deliver Amber's  program. Id. at ¶¶ 31-32.

Because of DOE's failure and refusal to implement Amber's IEP program, Guy and Patricia used all of their vacation and sick leave to implement the program themselves.  Eventually, Patricia N. was forced to quit her job and devote full time to implementing Amber's IEP program. Patricia N. consequently lost income and benefits, including but not limited to her health insurance benefits and life insurance benefits.  Id. at ¶¶ 32, 34.

The efforts by Guy and Patricia N. to implement Amber's IEP program caused them to suffer physical and emotional injuries, adversely affected their relationship with each other and Amber, and caused financial hardship for the family.  Id. at ¶¶ 36, 46-47.

Over the course of 1999, Guy and Patty made numerous attempts to have the DOE properly administer and pay for the home program.  The DOE alternatively misled them into believing that it would fulfill its obligations or simply ignored even their written pleas.   Id. at ¶¶ 38-42.

On or about August 30, 1999, Guy and Patricia N. filed a request for an administrative hearing, alleging that Amber had been denied her educational rights as required by Federal and State law.  The hearing was held on October 18, 19, and 25, 1999. In his decision dated February 5, 2000, the Hearing Officer found in

favor of the Plaintiffs, ruling, *inter alia*, that Amber and her parents had been denied FAPE because the DOE had neither provided all of the elements of Amber's program nor given the parents any written notice that it was refusing to pay for the program set forth in the IEP.  Id. at ¶¶ 43-44.

The stresses associated with DOE's failure and refusal to implement Amber's IEP and the consequent implementation of Amber's IEP by Guy and Patricia N., caused Guy N. to suffer serious health problems.  His blood pressure rose to such a level that his employer, the Honolulu Police Department, placed him on leave for several months.  Id. at ¶ 46.

Plaintiffs contend that these facts present a chilling picture of the Department of Education deliberately refusing to fulfill its legal obligations, treating these parents and Amber in a discriminatory manner because of her disability in violation of Section 504.

## B.  Procedural Background

In October of 1999, an administrative hearing regarding the provision of a free appropriate public education for Amber was convened at the request of Mr. and Mrs. N.  Amended Complaint at ¶ 44.   The issue addressed at the hearing was whether the DOE had substantively and procedurally violated the IDEA in failing to provide Amber any part of the program set forth in her individualized program.

The hearing decision issued in February, 2000, was totally in favor of the family and ruled that Amber had been denied FAPE.  Id.

On April 4, 2000, Mr. and Mrs. N. filed the instant suit seeking compensation for the full range of damages they have suffered, including lost wages and damages for emotional distress, all resulting from the wrongs committed by the DOE.   On January 17, 2001, the Defendants filed their motion to dismiss or in the alternative for summary judgment.  On February 16, 2001, Plaintiffs filed their own motion for partial summary judgment arguing that the hearing officer's decision was res judicata and that they were entitled to summary judgment on liability.   The court's rulings on these motions, denying Defendants' motion to dismiss the Section 504 claims, is set forth in *Patricia N. v. LeMahieu*, 141 F.Supp.2d 1243 (D. Haw. 2001).

On August 24, 2004, the Plaintiffs filed a renewed Motion for Summary Judgment.  On that same date, the Defendants filed their own Motion for Summary Judgment, and for the first time moved to dismiss for Failure to Exhaust Administrative Remedies.  *See* Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies filed herein on August 24, 2004.

The Defendants' 2004 motion to dismiss and its supporting memorandum bear striking resemblances to the instant motion and memorandum, which also rely on deposition transcript testimony from 2001.  In each motion, Defendants base

their arguments that Plaintiffs failed to exhaust their administrative remedies on the assertion that Plaintiffs are seeking "reimbursement for additional out-of-pocket expenses, including the purchase of a car" (Def. 8/24/2004 Mem. at 3; Def. 2008 Mem. at 4-5) "lost wages" (Def. 2004 Mem. at 11; Def. 2008 Mem. at 10-11), and amendments to Amber's program to allow forty additional hours per week (Def. 2004 Mem. at 13; Def. 2008 Mem. at 13).

In their 2004 response to the Defendants' exhaustion arguments, Plaintiffs expressly disavowed that they were seeking reimbursement for any further out-of-pocket expenses such as the purchase of a car, or any further amendments to Amber's IEP program.    See Pl. Mem. 9/3/04 at  4.

At approximately the same time as the 2004 motions were filed, litigation was proceeding in the *Mark H. v. LeMahieu* case, another Section 504 case arising in the educational context.  As explained in the recent Ninth Circuit decision in that case, **Mark H. v. Lemahieu,** 513 F.3d 922 (9th Cir. 2008), the district court granted the Agency's motion for summary judgment and denied the H. family's motion, dismissing the case.  In so doing, the district court held

> that there is no § 504 cause of action for violation of any affirmative right to a FAPE, reasoning that "IDEA procedures remain the exclusive remedy for correcting problems within the terms of the act, and for deciding what is best suited to a free appropriate public education." Judge Real further held that (1) pursuant to *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the U.S. DOE's § 504 regulations can not be enforced through the right of action implied under § 504; and (2) a state's waiver of sovereign

10

> immunity under § 504 does not extend to claims for damages for failure to provide an IDEA FAPE. Finally Judge Real concluded that, even if the H. family had a valid § 504 cause of action, the state would prevail on the merits, because "the [p]laintiffs do not present any evidence that they were intentionally discriminated against, 'solely by reason of their disability.'"

**Mark H. v. Lemahieu,** 513 F.3d at 931-32.

This case was held in abeyance pending the decision on the appeal in *Mark H.* When it finally issued its decision, the Mark H. court reversed the dismissal and held that a free appropriate public education under Section 504 is not the same as FAPE under the Individuals with Disabilities Education Act, and that Section 504 prohibits not only discrimination against the disabled, but also exclusion from participation in and denial of the benefits of state programs solely by reason of a disability. 513 F.3d at 937-938.

On June 2, 2008, Plaintiffs filed their First Amended Complaint in this case. The amended complaint does not seek recovery for a Chevy Tahoe or additional reimbursements or for changes to Ambers program. It rather states Plaintiffs' Section 504 claims in accordance with the guidance provided by the Ninth Circuit in *Mark H.*, and seeks the relief typically accorded under Section 504 to those aggrieved by its deliberate violation.

## III.  STANDARDS

### A. Motion to Dismiss

Under FRCP 12(b)(6), a complaint can be dismissed if it fails to "state a claim upon which relief can be granted."  Under Rule 12(b)(6), review is generally limited to the contents of the complaint, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).  On the other hand, dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1973 (2007).

### B. Motion for Summary Judgment.

Under FRCP 56(c), summary judgment should be rendered if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23(1986).  There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.  *Nidds v. Schindler Elevator Corp*., 113 F.3d 912, 916 (9th Cir. 1997).  The court views the facts in the light most favorable to the non-moving

party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir. 1989).

## IV. ARGUMENT

### A.    The Defendants' Motion should be dismissed because it violated LR56.1(a)-(e).

Defendants' current motion to dismiss presents matters outside the pleadings. *See* the Declaration of Gregg M. Ushiroda submitted with the motion, to which are attached Exhibits "A" through "F". These exhibits include pages of deposition transcripts. Under Rule 12(d) of the Federal Rules of Civil Procedure, if on a motion under 12(b)(6) or 12 (c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Under the Local Rules for practice before this court, a motion for summary judgment must be accompanied by a supporting memorandum and a separate concise statement of facts complying with LR56.1(a) – (e). Defendants' motion is not accompanied by a concise statement of fact, and should be denied for failure to comply with this Court's rules.

### B.  Plaintiffs did exhaust their administrative remedies.

It is clear under controlling Ninth Circuit law that Plaintiffs have adequately exhausted their administrative remedies, as all educational issues were resolved in the Hearing described in the Amended Complaint. Section 1415(l) of the IDEA provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter …

20 U.S.C. Sec. 1415(l).

In *Mark H.*, the plaintiffs alleged violations of Sec. 504 and the IDEA at the administrative level, but the Hearings Officer only addressed the IDEA violations in his ruling. *See Mark H.*, 513 F.3d at 928 n.3. The court stated in a footnote:

> Because the § 504 FAPE requirement differs from the IDEA FAPE requirement, it is not clear how the exhaustion provision of § 1415( *l* ) applies to suits for damages for failure to provide a § 504 FAPE. We need not reach this issue, because the H. family did exhaust the IDEA administrative remedies.

*Mark H.,* 513 F.3d at 935 n.11.

This footnote indicates that asserting IDEA violations at the administrative level is sufficient to satisfy the exhaustion requirement with respect to claims under Sec. 504.

Here, Plaintiffs have unquestionably used the administrative procedures to resolve IDEA issues. This is simply not a case where the plaintiffs were trying to bypass the administrative process entirely. Plaintiffs clearly attempted to resolve all educational issues at the administrative level before resorting to filing this law

suit. The administrative exhaustion is intended to give educational agencies the first opportunity to rectify shortcomings in educational programs, *see Blanchard v. Morton Scho. Dist.,* 420 F.2d 918 at 921 (9th Cir. 2005), and to resolve educational conflicts, *see Crocker v. Tenn. Secondary Sch. Athletic Assoc.,* 873 F.2d 933, 935, 873 F.2d at 935. That is precisely what occurred here.

Indeed, the posture of this case is strikingly parallel to *Wiles v. Dept. of Education*, __ F.Supp. 2d __, 2009 WL 1912467 (D.Haw. 2008), where Judge Kay addressed a similar exhaustion argument in the context of a Section 504 claim based on the failure to implement and found that exhaustion of the Sec. 504 retaliation claim was not required. The court reasoned that the *Mark H.* court indicated that asserting IDEA violations at the administrative level is sufficient to satisfy the exhaustion requirement with respect to claim under Section 504, including retaliation, *Wiles*, 2008 WL 1912467 at *14, and that it would be nonsensical to send the retaliation claim back to the administrative level if, as *Mark H.* suggests and this Court has ruled, the exhaustion requirement has been satisfied for the underlying Sec. 504 claim. The same reasoning applies here.

A number of other courts have reached similar conclusions with regard to exhaustion. *See, e.g. James S. v. School Dist. of Philadelphia*, __ F.Supp.2d __, 2008 WL 2357190 *13 (E.D. Pa. 2008)(discussing Third Circuit district court decisions holding that exhaustion is excused where a plaintiff seeks compensatory

damages not available under the IDEA), and *Blanchard v. Morton School District*, 420 F.3d 918 (9th cir. 2005). Although the plaintiff in *Blanchard* ultimately failed on her Section 504 claims, *Blanchard v. Morton School Dist.,* 509 F.3d 934 (9th Cir. 2007), she successfully argued that exhaustion of IDEA administrative proceedings was not required before she sought Section 504 damages for her own emotional distress caused by defendants' conduct, as well as reimbursement for wages lost while pursuing her son's remedies under the IDEA.  *Blanchard,* 420 F.3d at 920.   The court concluded that exhaustion was not required because "Blanchard's emotional distress injuries and lost income could not be remedied through the educational remedies available under the IDEA." *Id.* at 921-922.

*See also Witte v. Clark County School District*, 197 F.3d 1271, 1275 (9th Cir. 1999)(Exhaustion of IDEA administrative process not required where Plaintiff seeks only monetary damages, which is not "relief that is available under" the IDEA, and where all educational issues already have been resolved to the parties' mutual satisfaction through the IEP process, Plaintiff is not "seeking relief that is also available" under the IDEA, 20 U.S.C. Section 1415(l)).

Thus, under controlling law, Plaintiffs have satisfied any exhaustion requirement, and there is no basis to dismiss any portion of their complaint.

C.     **The Defendants' motion should be dismissed because it relates only to allegations and claims that Plaintiffs have never made and expressly disavow.**

Plaintiffs have made no allegation in the Amended Complaint seeking reimbursement for expenses for an additional speech therapist, "parent consultant" or the "purchase of a new Chevy Tahoe SUV."  See Def. Mem. at 3, 7. Irrespective of any deposition testimony given in 2001, Plaintiffs are not seeking now, and have never sought in this action, reimbursement for any out-of-pocket expenses for items used in Amber's home program because their reimbursement claims were resolved in the IDEA administrative proceeding.   Indeed, Plaintiffs expressly disavowed seeking reimbursement for a car in their 9/3/04 memorandum at 4, and it is troubling that Defendants continue to suggest that they are seeking any such relief.

As to Defendants' other claims related to additional personnel, additional time, or other changes to Amber's program, Plaintiffs once again are not seeking that relief here.  There is no allegation in the first amended complaint seeking this relief.  From a purely common sense point, it would make no sense to seek through this action (or an administrative hearing) changes to a 1998-2000 program.  Eight years have past, and Amber's needs and program today are very different than they were then.   In addition, the parties stipulated in the administrative proceeding that "the time amounts set forth in the January 13, 1998, April 3, 1998, May 5, 1998,

November 6, 1998 and January 29, 1998 IEPs were appropriate." Hearing Decision at 5. The Hearing Officer ordered the DOE to submit a program and services to provide FAPE to the student. Id. at 13.

### D.    Lost Wages

The Defendants suggest that the Hearing Officer has authority to award the wages, benefits, etc. that Patty lost when she was forced to resign her job in order to educate Amber, and that the Plaintiffs waived claims for these damages by failing to seek to recover them in the administrative proceedings. Def. Mem. at 10-12. Defendants suggest that "all they really wanted was someone to take Patricia's place to implement and run the in-home program so that she could return to work", and that "[a] hearing officer has the authority, if warranted, to redress this situation by ordering the appointment of an individual to take over the implementation of the in-home program." Def. Mem. at 11.

Defendants have misstated the record. The principle claim at the administrative hearing was that the Defendants had refused to implement Ambers' IEPs. The Hearing Officer did order the DOE to provide both program and services to Amber, Hearing Decision at 13. The order to provide the services prospectively, however, did not compensate for Patty's loss of her job with all of its attendant benefits (including having time away from caring for her disabled children).

18

That leaves the question whether the Hearing Officer could have ordered the Department of Education to award damages to Mrs. Nahale for her lost employment benefits when she was forced to quit her job in order to provide Amber the public education to which she was entitled.   The Hearing Officer did not have authority to address damage claims.  The scope of the inquiry before him was two fold:  First, has the state complied with the procedures set forth in the Act?  And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?   *Bd. of Educ. v. Rowley*, 458 U.S. 176 at 206-07 (1982). *See* 20 U.S.C. Sec. 1415 (b)(6)(allowing the parents an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child).

The Defendants have not cited any authority from here in Hawaii or elsewhere where an IDEA hearing has resolved a wage and benefits loss claim. Resolution of such claims in the context of an IDEA hearing would vastly have changed the scope and nature of the IDEA administrative hearing beyond the parameters delineated by *Rowley* and would require substantial, non-educational expertise on the part of the Hearings Officer.  Thus, monetary damages are not generally available under the IDEA. *Witte v. Clark County Sch. Dist.,* 197 F.3d

1271, 1275 (1999); *see also Taylor v. Honig,* 910 F.2d 627, 628 (1990) (noting that "injunctive or other prospective relief is ordinarily the remedy under the [IDEA] and damages are usually inappropriate"); *Mountain View-Los Altos Union High School Dist. v. Sharron B.H.,* 709 F.2d 28, 30 (9th Cir. 1983)(stating that IDEA does not evidence congressional intent to provide a damage remedy and the phrase all "'appropriate relief' is usually construed as a mere grant of jurisdiction to enforce and supplement the administrative procedures for identification, evaluation, and placement of the child, and not of authority to award retrospective damages".)

The Defendants cite the case of *Bucks County Department of Mental Health/Metal Retardation v. Commonwealth of Pennsylvania*, __ F.3d ___, 2004 [2004 WL 1842611, (3rd Cir. 2004)] for the proposition that time spent by a parent in providing Lovass training to his/her child can be reimbursed at a rate similar to what the school district typically pays for the type of services rendered. The Defendants make no showing that this reimbursement in the case at hand would be the same as the salary and benefits, including pension benefits that Patty enjoyed in her employment. Further, as the *Buck* court noted, it addressed the reimbursement for services question as a matter of first impression. 2004 WL 1842611 at *6. The Buck decision came well after the hearing decision in this case. Thus, at the time

of the administrative hearing, there was no authority particularly within this jurisdiction for such a reimbursement claim.

Alternatively, Plaintiffs suggest that the Defendants are essentially making a mitigation of damages argument, i.e. that Plaintiff Patty Nahale could have recovered some payment for her time in the administrative hearing which would offset her wage losses. However, the mitigation argument can be presented more easily here than in an administrative proceeding where the hearing officer's expertise is limited to educational issues and no discovery is allowed.

### E.    Plaintiffs are entitled to all available remedies for the discrimination they have alleged.

The remedies that Amber and her parents are seeking here for general and special damages are traditional remedies for violations of Section 504. *See, e.g. Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1115 (9th Cir. 1987)(organizations of or for handicapped persons have standing to sue for injunction relief under section 504 and for damages under 504); *Winkelman v. Parma City School Dist.*, 127 S.Ct. 1994, 2006 (2007)("It is beyond dispute that the relationship between a parent and child is sufficient to support a legally cognizable interest in the education of one's child."); *Sheely v. MRI Radiology Network*, 505 F.3d 1173, 1190-1204 (11th Cir. 2007)(analyzing the right to recover for emotional distress under Section 504 in light of the *Barnes v. Gorman*, 536 U.S. 181(2002), the court concluded, *id.* at 1204, that "[a] foreseeable consequence

of discrimination is emotional distress to the victim, and emotional damages have long been available for contract breach in the public accommodations context. Thus, where one of the benefits the government has bargained for is the funding recipient's promise not to discriminate, the recipient cannot claim to lack fair notice that it may be liable for emotional damages when it intentionally breaches that promise. … In short, we conclude that emotional damages are available to make whole the victims of violations of Sec. 504 of the Rehabilitation Act ….)

In *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002), the State appealed, among other things, whether the plaintiffs were entitled to compensatory damages for violations by the State of Title II of the ADA and Section 504 of the Rehabilitation Act. The *Lovell* court noted that the lower court "found that 'the scope of compensatory damages ***encompasses both general and special damages,***' to be individually assessed in the separate actions filed by individual class members." *Lovell*, 303 F.3d at 1047 (emphasis added). Its ruling that compensatory damages comprised of general and special damages were appropriate in the case at hand because the state had acted with deliberate indifference is completely consistent with the Plaintiffs' position. *Lovell*, 303 F.3d at 1047.

The position of the Ninth Circuit in *Lovell* recognizing that plaintiffs can recover both general and special compensatory damages is consistent with its

earlier decisions, including *Witte, and the remedies provisions of Section 504.*   In *Smith v. Barton*, 914 F.2d 1330, 1337 (9th Cir. 1990), *cert. denied* 501 U.S. 1217 (1991), the Ninth Circuit was faced with the issue of whether a plaintiff was entitled to a jury trial in a section 504 case.  The court recognized the right to a jury trial under Section 504 because the plaintiffs in that case sought money damages that were not in the nature of restitution (that is, the plaintiff was not seeking an equitable remedy), but rather sought money damages for loss of job responsibilities, status, and administrative leadership occasioned by defendant's actions.  Obviously, if general damages of this nature were not allowed under Section 504, the Ninth Circuit in *Smith v. Barto*n would have ruled against the right to a jury trial.

## V.    CONCLUSION

For all the foregoing reasons, the instant motion should be denied.  The Plaintiffs have satisfied the exhaustion requirement set out in 1415(l), and the claims they now assert and remedies they now seek are properly brought under Section 504.

DATED:  Honolulu, Hawaii, August 22, 2008.

/S/ STANLEY E. LEVIN

_____

STANLEY E. LEVIN
MICHAEL K. LIVINGSTON
ANNE L. WILLIAMS
Attorneys for Plaintiffs