**EDUCATION POLICY SOLUTIONS, LTD.**
**147 Marcum Lane**
**Harpers Ferry, WV 25425**

David Rostetter, Ed. D.
Fax: (304) 728-6337

Phone: (304) 728-6369
e-mail: drostetter@msn.com

August 25, 2008

Gregg M. Ushiroda
Watanabe, Ing
First Hawaiian Center
99 Bishop Street, 23rd Floor
Honolulu, Hawaii, 96813

Dear Mr. Ushiroda,

Following is my expert report.

Sincerely,

*David Rostetter*

David Rostetter

**EXPERT REPORT OF DAVID J. ROSTETTER**

**I.    INTRODUCTION**

1.    This report is in response to a request from counsel for the Hawaii Department of Education (HDOE) in the matter referenced above. Opinions were sought concerning the Individuals With Disabilities Education Act (IDEA) and Section 504 of the Rehabilitation Act of 1973 (Section 504) and the practical application of these statutes in educational settings. Opinions were also sought concerning the history and roles of these statutes as educational agencies have worked with them.

2. I am uniquely qualified to provide these opinions as I was directly involved in the formulation of the regulations and the administrative and policy decisions made during the early period of their implementation.

3. I have also spent the last twenty years of my career dealing directly with schools, educational agencies, and the courts as these statutes and regulations have been applied, interpreted, and changed. I will provide information describing my role while in the U. S. Department of Education from 1975 through 1986 as well as my work since leaving the Department in further detail following my opinions set forth below. After that description I will provide the basis for each opinion. My previous testimony, qualifications, and compensation will follow the Basis for Opinions Section.

## II. OPINIONS

4. ***Opinion One: Section 504 and IDEA were designed and put in place to serve explicitly different roles as applied to educational agencies with responsibility for serving children and youth throughout the nation.***

5. ***Opinion Two: The standards for determining appropriate education and satisfactory compliance are substantively and procedurally different.***

6. ***Opinion Three: The administrative structures and mechanisms for carrying out the two statutes are completely separate and different from each other.***

7. ***Opinion Four: Reasonable accommodations that provide access and support to students may be provided absent any written statement of such or may be set forth during the IEP process as "accommodations" or "modifications".***

## III.   BACKGROUND

8. I worked at the U. S. Department of Education, formerly HEW, in 1975 and worked their until August 1987.

9. In 1980, I served as Coordinator of a Memorandum of Understanding between the U.S. DOE's Office for Civil Rights (OCR) and its Office of Special Education (OSEP). The Memorandum delineated the authority of OSEP in administration of IDEA, formerly the Education of All Handicapped Children's Act, and the authority of OCR in its role in the investigation and enforcement of Section 504. I was responsible for the monitoring and technical assistance activities of both offices to ensure coordination of all such activities.

10. In 1981, I became Director of the Division of Assistance to States, an agency responsible for federal monitoring of Part B of IDEA, as well as policy development and technical assistance for Part B. Included in my responsibilities was continued coordination of the Memorandum of Understanding between OSEP and OCR. Such coordination had, as its primary emphasis, the consistent delineation of OCR activities to avoid any overlap by OCR in the enforcement of the requirements of Part B. My position required a thorough understanding of Section 504 and its applications.

11. Though I left the Department of Education in 1986, I continued to participate in the development of model IDEA procedures for use by states and school districts issued by the U. S. Department of Education in 1987. In 1989, I chaired a work group for the Department to update its monitoring system and develop guides for IDEA monitoring of states and school districts.

12. I have continuously written, presented, and taught about the importance of Section 504 as a vehicle to be used by schools to secure accommodations to support access to schooling. This work at the nexus of the two statutes at the federal and local levels has led to a

deep policy and practical sense of the two statutes and how they should work and what they should result in.

## IV. BASIS FOR OPINIONS

13. Each opinion and the basis for the opinion is provided in this section of the report.

14. ***Opinion One: Section 504 and IDEA were designed and put in place to serve explicitly different roles as applied to educational agencies with responsibility for serving children and youth throughout the nation.***

15. Section 504 was signed into law two years before the Education of All Handicapped Children's Act (IDEA's predecessor statute). In fact, the special education statute was still being formulated as a model statute being "shopped around" to states and various education organizations in Washington. When Section 504 was passed and after its regulatory framework was established, EHA-B was not even finalized as a statutory proposal.

16. Administrative responsibility for the two programs was assigned to two separate offices in the Department of Health, Education and Welfare. The Bureau of Education for the Handicapped was assigned EHA-B and the Office for Civil Rights was assigned Section 504.

17. IDEA administration was the responsibility of the Division of Assistance to States within BEH. This Division was staffed with educators and the mission was to provide support and assistance for the implementation of the new massive and pervasive special education law.

18. By 1979, shortly after the development and start dates of the Section 504 and IDEA regulations, a series of complaints from schools, states, and advocacy organizations were set out in reports and correspondence to Congress and the Department. These agencies and

organizations included the Council of Chief State School Officers, the National Association of State Directors of Special Education, and the Children's Defense Fund.

19. All of the complaints were different in terms of viewpoint and perspective but the common theme was that neither OCR nor BEH were effective and the two agencies were overlapping and inconsistent in exceeding their authority.

20. The Result of these complaints and others was a Memorandum of Understanding (MOU) between the two agencies

21. The implementation of the MOU eventually led to a clearer delineation of responsibilities and roles. The OCR role was confined to issues of nondiscrimination including access and accommodations. EHA-B, on the other hand, was to be administered as a formula grant program to provide assistance to states

22. ***Opinion Two: The standards for determining appropriate education and satisfactory compliance are substantively and procedurally different.***

23. As its own public policy, obviously distinct from IDEA, Section 504 took its place along other anti-discrimination statutes. The purpose of Section 504 is to prevent any denial of participation or benefit typically available to nondisabled school-age individuals. This is very clear when the standard for appropriate education set forth in Section 504 is examined. The standard is a comparative one. A student is receiving appropriate education under Section 504 when their needs are met "as adequately as" the needs of other students. It is essentially an equity standard.

24. Two years later, Congress passed EHA-B and adopted a different standard. The standard in EHA-B (now IDEA) is procedural and individualized.

*Expert Report*
*David Rostetter*

5

25. ***Opinion Three: The administrative structures and mechanisms for carrying out the two statutes are completely separate and different from each other.***

26. The organizational and administrative structures used to administer each program are different and directly reflect the different purposes and design of each.

27. As a formula grant program, IDEA (formerly EHA-B) is administered through the states. The state education agency is the single point of responsibility for "general supervisory authority" over all special education programs in a state. The Office of Special Education Programs (formerly BEH) in the U. S. Department of Education has no authority to make findings against a local school district. Nor does it have any role in the investigation and resolution of IDEA complaints. All OSEP may do is determine is whether a state operates in an administratively compliant way.

28. OCR, on the other hand, uses a federal enforcement model which relies predominantly on complaints which are investigated and enforced directly at the local level. The states have no role in Section 504 enforcement.

29. OSEP does not work through the ten federal Regional Offices. OCR is regionalized.

30. An additional difference which speaks directly to the different purposes is what expertise the two agencies recruit and hire. OSEP has no legal office. In fact it may not hire a person to act as an attorney. OSEP hires educators. OCR hires and relies on attorneys for all decision-making because its work is legal and involves law enforcement.

31. Plainly, in every way the two programs are different and are administered in ways that demonstrate, pervasively, those differences.

32. ***Opinion Four: Reasonable accommodations that provide access and support to students may be provided absent any written statement of such or may be set forth during the IEP process as "accommodations" or "modifications".***

33. Modifications in support of student access to educational services and regular curriculum are found in the IEPs of students with significant needs routinely.

34. Not surprisingly, such modifications are found in the IEPs of the students in these cases as well. These modifications and accommodations are not specially designed instruction or related services as set forth in IDEA. Rather they are exactly what might be made available if a student only needed access. Thus, in these IEPs the reasonable accommodation requirements of Section 504 are met even if the special education and related services requirements of IDEA might not be.

35. Given all of the above, the assertion that any failure to provide FAPE as set out in IDEA is a Section 504 compliance failure is simply ridiculous. Such a claim ignores the history, purposes, design, and implementation of the statutes. It is an attempt to blur issues that must be kept clear. The argument is a distortion of law and practice to extort financial remedies from education agencies. These claims are bad practice and can only result in bad public policy with enormous detrimental implications for all of us.

## IV. PREVIOUS TESTIMONY

C. B. v. Albuquerque Public Schools
W. A. v. Florida State School for the Deaf and Blind
M. P. v. Florida Department of Corrections et al
C. E. v. Springfield Public Schools
B. W. v Henry County Public Schools
E. C. v. School District of Philadelphia
S. P. v. Webster Public Schools
R. B. v. Florida State School for the Deaf

*Expert Report*
*David Rostetter*

7

A. L. v. Los Alamedas Schools
S. K. v. Las Virgenes School District
A. H. v. Magnolia School District
C. E. v. Springfield School District
A. D. v. Okaloosa County Schools
A. W. v. Shoreline School District
Z. D. v. Hamilton Schools
W. C. v. Cobb County Schools
Fayette County Schools v. D. T
K. G. v. School Board of Santa Rosa County
Thomasville NAACP v. Thomasville City Schools

## V. COMPENSATION

$225 per hour

## VI. QUALIFICATIONS

My C. V. is attached. Following is a summary of my qualifications and experience.

Degrees earned are:

    Ed. D.  State University of New York at Albany
             Education Administration

    M. S.  State University of New York at Albany
             Education Administration

    B. S.  SUNY College at. Fredonia
             Political Science

I currently hold the position of Associate Professor of Education at the Ralph C. Wilson School of Education at St. John Fisher College in Rochester, New York. I teach the following courses:

<u>Cultural Foundations of American Education</u> – Survey of the cultural, social, and economic factors that influence American education.

<u>Special Education in Today's Schools</u> - An introduction to teaching students with disabilities. This course includes a broad overview of the etiologies, characteristics, educational implications, and interventions for teaching this diverse population. The importance of linking educational outcomes for students with disabilities to the New York State Learning Standards is introduced.

*Expert Report*
*David Rostetter*

8

<u>Social Justice and Multicultural Issues in Education</u> - This course explores many aspects of diversity including gender, sexual orientation, religion, race, ethnicity and culture. The interaction of these characteristics is also examined.

<u>Best Practices and Public Policy</u> – This course is and advanced professional level course that examines the origins and evolution of public policy and its effect on practices in schools. Candidates examine case law, the civil rights and entitlement frameworks, and state and local practices. A model for policy analysis of used to dissect and understand real time case studies involving children and youth with disabilities.

<u>Critical Issues in Literacy and Special Education</u> – This course reviews current research and issues that effect student reading and reading and literacy problems for all students. Candidates review and analyze specific problem areas such as cultural and racial bias and how socioeconomic status effect literacy and school performance. In addition to group projects, candidates develop comprehensive literature reviews in selected issues arrears.

<u>Master's Degree Thesis</u> – Supervision and guidance for candidates as they research and develop a graduate level thesis in selected subject areas.

<u>Seminar for School Leaders</u> – An advanced seminar for school leaders addressing current policy and practice in special education.

I have been a consultant to local educational agencies, state educational agencies, the U. S. Departments of Justice, Education, and Health and Human Services since leaving the U. S. Department of Education in 1986. While at the U.S. Department of Education, I carried out a number of assignments including: Director of the Division of Assistance to States with responsibility for the administration of IDEA-B and relevant EDGAR requirements through review of state education plans, awarding of funds, monitoring and the provision of technical assistance to states.

I have served as the Special Assistant to Madeleine Will, Assistant Secretary, Office of Special Education and Rehabilitative Services (OSERS) and was responsible for preparation of congressional testimony, liaison with OSERS organizational units, and external affairs.

Of particular importance is my direct involvement in the review of over ten thousand IEPs and participation in over three hundred IEP meetings. His experience provides a broad base upon which to assess the relative uniqueness and appropriateness of a school district' efforts to serve a student.

Selected Recent Work Experience:

- **Consultant:** Providing assistance to the Ravenswood City School District to achieve compliance with federal and state laws and Court Orders resulting from <u>Emma C. v. the Ravenswood City School District and the California Department of Education</u>. Assistance includes the development of new policies and procedures, staff development, assessing student programs and evaluating overall district performance.

- **Consultant:** Assistance to the Fayette County Public Schools, Fayette, Ga., in designing and implementing a comprehensive preschool program for students with developmental needs as well as non-disabled preschoolers.

- **Special Master:** Federal court appointed Special Master in <u>Duane B. v. Chester Upland School District and the Pennsylvania Department of Education</u>. Responsibilities include oversight and enforcement of Stipulations and Orders as well as assistance to the District in complying with state and federal law.

- **Consultant:** Providing assistance to the California Department of Education in the design and implementation of a new monitoring system using focused monitoring approaches.

- **Monitor:** Selected by both parties to monitor implementation of a Settlement Agreement in <u>D. J. v. Arizona Department of Education</u> concerning Arizona efforts to implement an effective complaint management system. Expert report filed supporting the plaintiff's claim that the class did not have available proper methods of administration to investigate and resolve complaints.

- **Consultant:** To the State of Ohio and the Ohio Associations of Elementary and Secondary School Principals for the development and implementation of project APEX. Project APEX provided training to approximately 1500 principals on the history and implementation of legal and appropriate inclusive practices.

- **Evaluator:** Beaufort County Schools. A review of effectiveness of special education and recommendations regarding cost savings and improved programming. Similar Report was also completed for the Clark County Schools in Las Vegas, Nevada.

- **Evaluator:** Reports for federal courts in Baltimore and Philadelphia on special education programs as well as work with the Office for Civil Rights and the states of Massachusetts and Illinois in assisting in developing appropriate responses to program deficiencies.

- **Consultant:** To the State of Alabama for the development of a Remedy Plan and School Reform Initiative. Participated in the development of all aspects of a Comprehensive plan to improve the Alabama public school system with an emphasis on school equity and quality education.

- Consultant: To the Commonwealth of Pennsylvania on the implementation of the necessary initiatives and structural changes to implement the <u>Cordero</u> Court order which requires the interagency provision of services to students with disabilities in need of services from many